50 CCPA

## Application of John PAVLECKA.
### Patent Appeal No. 6985.

United States Court of Customs and Patent Appeals.

340

James E. Siegel, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and AL-MOND, Judges.

SMITH, Judge.

Appellant has appealed from the decision of the Board of Appeals which affirmed the rejection of 16 claims in his application [1] for patent for an "Interlocked Panel Structure". Since the rejection of claim 9 has not been appealed, fifteen claims remain in this appeal.

Appellant's invention relates to a panel or wall construction in which a hollow wall is formed by several panels fastened together in one embodiment by means of a slidable key which engages "stringers" attached to the interior surfaces of spaced opposing faces of the panels. In another embodiment, similar keys are employed on both sides of a stud or structural member placed between the spaced opposed faces of the panels and are attached to stringers on each face of the opposed panels. Appellant has emphasized in his specification and brief and again at oral argument that his inventive concept resides in providing an interlocking, slidable key *having at least two* interlocking projections or dovetailed tenons on each side of a central web. Such a key may be slidably interlocked with a "full stringer" attached to the central portion of a wall panel and it may also be interlocked with two "half stringers" attached to the edges of abutting wall panels which form the equivalent of a full or intermediate stringer. The various panel constructions made possible through use of appellant's key, full stringers and half stringers are illustrated in Fig. 1 of appellant's application which is reproduced below:

The second embodiment disclosed which has a structural member or stud interlocked on each side to panel stringers by a key on each side is similar to the first embodiment in that use of a key having *at least two* interlocking projections on each side of a central web makes possible the same variations of panel joints as shown in Fig. 1.

[1]. Serial No. 318,692, filed Nov. 4, 1952.

In affirming the examiner's rejection of the appealed claims as obvious over the prior art under 35 U.S.C. § 103, the board relied upon the following references:

| London | 2,164,138 | June 27, 1939 |
| Sheldon | 2,369,373 | Feb. 13, 1945 |
| Steppe (French) | 524,688 | Sept. 8, 1921 |

The patent to London, primarily relied upon by the examiner and board, discloses a hollow wall building construction in which the parallel walls are snapped or pushed together to intermesh mortise and tenon members which form a stud or structural support within the wall. A portion of Fig. 4, relied upon by the board, is reproduced below:

As shown above, Fig. 4 of London does not disclose any key nor is there a longitudinally *slidable* relationship, since the panels are joined by pushing them together. The examiner and board took the position that members $E^1$, attached to each abutting edge of panels 18, form a full stringer to engage member F, and thus London discloses appellant's concept of full and half stringers.

To supply the feature of the interlocking slidable key to the construction shown above in London's Fig. 4, the board relies upon Figs. 1 and 1A of London and the Sheldon reference.

In Figs. 1 and 1A, London discloses another embodiment in which projecting arms on a "spacer and reinforcing member" engage dovetailed tenons attached to the inner sides of the panels. The projecting arms form roughly a single mortise.

Sheldon discloses a wall construction having a coupler or key with a single dovetail shaped tenon on each side which slidably engages sheet metal ribs attached to the inner sides of opposing panels. Sheldon does not disclose appellant's concept of half and full panel stringers.

The French patent to Steppe, for "interlinkable" building blocks, was relied upon only to show the concept of a central member having a key on each side which engages the wall or panel members. Steppe's keys are shaped like a dumbbell and engage complementary recesses in the central structural member and the inner side of the outer members.

Rejected claim 55 is as follows:

"In a structure, panels meeting in continuity with one another at parting lines in two rows distanced from each other, intermediate stringers extending on said panels at spaced intervals apart from said parting lines, each of said stringers bearing an extremity away from the panel thereof and having plural reentrant lengthwise mortises therein, stringers based on said panels in juxtaposition with each other at and along said parting lines therein, each two of said stringers in juxtaposition bearing coplanar extremities away from the panels thereof and forming jointly an equivalent of one of said intermediate stringer extremities and of said plural mortises therein, said intermediate stringers and said stringers in juxtaposition on said panel rows being in confronting proximity of said extremities thereof, and linear keys having each a central web and plural reentrant lengthwise tenons on each side thereof, one of said keys being in contiguity of the sides thereof with each two of said stringer confronting extremities and in a slidable mortise-and-tenon interfit therewith."

Appealed claims 28, 31, 32, 34, 36, 45, 64, 65, 66, 67, 70 and 71 define various keyed unions of panels or panels and structural members. Appealed claims 72 and 74 define keyed unions of facing panels with a central structural member having a key on each side which interlocks with confronting panel stringers.

Claim 55, as well as all of the appealed claims above, defines appellant's basic concept of slidable interlocking keys " * * * having each a central web and plural reentrant lengthwise tenons on each side thereof, * * * ". Appellant states that the interlocking of this plural tenoned key with the complementary mortises of a full stringer or two half stringers securely prevents movement in any direction and provides a bearing surface between the key tenons which is in contiguity with the surface of the stringer tenon (see appellant's Fig. 1,

supra). Appellant urges that these features are absent in all of the reference structures and in any combination of them and therefore the appealed claims define structures unobvious to a person of ordinary skill in the art, even with the combined teachings of the references before him. Since all the appealed claims define these features relied upon by appellant, it is unnecessary to consider them separately.

In finding the claimed structures to be "unpatentable over the patents to London and Sheldon", the board stated that:

" * * * We agree with the Examiner's holding that substitution of spline joints as taught by Sheldon for the tongue and groove joints between the stringers or structural members of London would be an obvious substitution. The minimum number of tenons employed would necessarily be that sufficient to prevent separation of the parts connected with any additional tenons involving a mere duplication. For example, the use of a plurality of tenons to effect a connection between such members as E and G, which obviously may also be used at opposed ends of the double panel structure in carrying out the teaching of London, involves mere duplication."

We do not agree with the board's conclusion for the following reasons. First, the "obvious" substitution of Sheldon's spline joints for the tongue and groove joints shown in Fig. 4 above of London would provide a keyless structure having various "stringers" of several varieties, a single mortise and tenon interlocked (E and G) and two single tenoned stringers ($E^1$) interlocked with a double mortised stringer F. The next step in the board's reconstruction of the prior art would be to separate these stringers and provide them with interlocking, slidable keys. These keys would necessarily be complementary to the "stringers" $E^1$, F, E and G. Thus, a first key would have two *mortises* which interlock with stringers $E^1$ and two tenons which interlock with stringer F while the second key

would have a *single* mortise and a *single* tenon which interlock with stringers E and G, respectively. The last step in the reconstruction would be to replace these keys with a key having two or more interlocking tenons on each side and to modify the stringer members E¹, E and G accordingly. It is clear that none of the prior art references indicate the desirability of having a multiple tenoned interlocking key as used in appellant's structure. Thus, the only source which would lead a person of ordinary skill in the art to make the last step in the board's reconstruction is appellant's own disclosure. Use of appellant's disclosure is barred since, under 35 U.S.C. § 103, obviousness must be tested at the time the invention was made. It is our conclusion, therefore, that modification of the London reference in view of Sheldon, as urged by the board, would fail to make obvious the concept claimed by appellant when properly tested under the express provisions of 35 U.S.C. § 103.

The solicitor argues that the appellant's concept of a multiple tenoned key is unnecessary to provide the various relationships of panels, keys and structural members claimed by appellant and that appellant's inventive concept is merely a duplication of parts shown by the prior art. This argument is stated in the solicitor's brief as follows:

"Initially, a critical appraisal of appellant's touted key, having at least two tenons on a side, is in order. Inspection of Figure 1 * * * [reproduced above] will show that the central mortise between said tenons is the essential key feature, and not the tenons as such. Drawing two vertical lines through each of the three joints, medially of the key tenons, will facilitate appreciation of this fact. The portions of the key and stringers between the two vertical lines for each joint constitute all that is essential for that joint, the so revealed essential joints bearing a striking resemblance to the subject matter of companion Appeal No. 6983. Appellant has done little more

here than extend a repetitious mortise-and-tenon pattern laterally beyond the essential joints between the lines. As seen, the sides or faces of his key 'web' amount to no more than an aggregate of mortise bases in the key. Conversely, the confronting faces of the stringers amount to an aggregate of outer surfaces or crests on the stringer tenons. Is there any wonder that such faces on the 'web' and stringers are contiguous, where a common fully complemental mortise-and-tenon pattern is present? Truly, mere duplication of tenons or, perhaps more accurately, lateral extensions of the mortise-and-tenon pattern is relied upon here as a purportedly distinct invention. * * *"

*Assuming* that the essential feature of the appellant's key consists of only a single interlocking *mortise* on each side of the central web, we note that neither Sheldon nor the French patent discloses a key having a single interlocking *mortise*. The single interlocking *tenon* shown by Sheldon would not perform the same function as a single interlocking *mortise* urged by the solicitor since, in a construction where the key engages two half stringers on abutting panels, a single *tenoned* key would not interlock the half stringers together. While Figs. 1 and 1A of London disclose a "spacer and reinforcing member" having arms which form in effect a single mortised "key", this "key" does not provide a bearing surface on either side of the mortise to engage a similar bearing surface on the stringers. Thus, even if we accept the solicitor's analysis of appellant's key, we find nothing in the references which, as urged by the solicitor, would render obvious even a single *mortised* key.

Appealed claims 28, 31, 32, 34, 36, 45, 55, 64, 65, 66, 67, 70, 71, 72 and 74, each specifically define a slidable interlocking key having two or more tenons on each side of a central web in association with various combinations of panel stringers and structural members. As such, each of the appealed claims define structures which we find would have been unobvious

**344**

to a person of ordinary skill in the art, having the combined teachings of the cited references before him at the time the invention was made. We therefore reverse the decision of the Board of Appeals.

Reversed.