**KANSAS JACK, INC.,**
**Appellant/Cross-Appellee,**

v.

**Charles J. KUHN and Kuhn Manufacturing Company, Inc., Appellees/Cross-Appellants.**

**Appeal Nos. 83–638, 83–643.**

United States Court of Appeals, Federal Circuit.

Oct. 12, 1983.

William Bruce Day, Kansas City, Mo., argued, for appellant/cross-appellee.

E. Roderick Cline, Pasadena, Cal., argued, for appellees/cross-appellants.

Before MARKEY, Chief Judge, RICH and BENNETT, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a judgment of the U.S. District Court for the Central District of California holding that claims 1, 2, and 11 of U.S. Patent 3,566,667 (Hagerty patent) are invalid, and that William K. Hagerty (Hagerty) did not commit fraud on the Patent and Trademark Office (PTO). We affirm.

## BACKGROUND

The Hagerty patent, for which the application was filed on October 28, 1968, and which issued on March 2, 1971, discloses and claims a vehicle frame straightening device, best illustrated in Fig. 1:

Fig. 1

Chain 30, one end of which is connected to the frame to be straightened, passes over fulcrum pulley 25, idler pulley 45, and force pulley 55. It is firmly fastened near the front legs of posts 11 and 12. Yoke 56, carrying force pulley 55, travels in the direction of arrow 57, in response to a power ram 60, to cause the force pulley 55 to rotate and exert a pull on chain 30. A U-bar 37, attached to the hub which supports the fulcrum pulley 25, receives an anchor chain 32 which is fastened to the floor. Spaced openings 18, 19, and 20 allow adjustment of the fulcrum pulley and U-bar 37 to accommodate pulls at various heights.

Hagerty and Charles J. Kuhn (Kuhn) were once co-workers. Kuhn showed Hagerty an anchor post used as an anchor chain tie-down in April of 1967, and a post (Kuhn post) for straightening frames in July of 1967. The Kuhn post is shown in Kuhn's Exhibit 165:

Kuhn filed a patent application on the Kuhn post on June 20, 1968, and received U.S. Patent 3,589,680 on June 29, 1971.

In September 1972, Kuhn filed a reissue application copying claims from, and requesting an interference be declared with, the Hagerty Patent and U.S. Patents 3,612,482 (Eck) and 3,566,666 (Berendt). An interference proceeding between Kuhn's reissue application and the Eck and Berendt patents was terminated without effect here. The Kuhn-Hagerty interference was settled by an agreement granting Kuhn a non-exclusive license under the Hagerty patent.

Kansas Jack, as assignee, sued Kuhn on February 12, 1979, for infringement of the Hagerty patent. Kuhn conceded infringement of claims 1, 2, and 11, but pled the license as an affirmative defense.[1]

A trial limited to the license defense was held in January 1980. The trial judge rejected the defense because the license limited Kuhn to making, using, and selling the device Kuhn was making at the time that it was executed. That device was not the accused device Kuhn was marketing when sued.

After trial on the remaining issues, Judge Robert J. Kelleher entered a Memorandum of Decision and Order holding claims 1, 2, and 11 of the Hagerty patent invalid under 35 U.S.C. § 103[2] in view of: (1) the Kuhn post and U.S. Patent 1,785,923 (Wade) or U.S. Patent 3,492,855 (Wylie); (2) the Kuhn post and Eck, and Wade or Wylie; (3) U.S. Patent 1,810,680 (Rothgarn); (4) Rothgarn and U.S. Patent 1,553,609 (Grau); and (5) Wylie or Eck and U.S. Patent 3,340,720 (Chartier) or the Kuhn post.

Judge Kelleher further held that Kuhn had not established that Hagerty committed fraud on the PTO.

■ Kansas Jack's appeal attacks the holding of invalidity. In a separate appeal, Kuhn attacks (1) the holding of no fraud, (2) a finding of commercial success, and (3) the court's refusal to allow presentation of "prior use" and "on sale" defenses under 35 U.S.C. § 102. Having prevailed on the issue of validity, to which attacks 2 and 3 relate, Kuhn has no standing to make those attacks by way of appeal.

## ISSUES

Whether the trial judge erred in holding (1) that claims 1, 2, and 11 are invalid under

---

1. The Hagerty patent contains 26 claims. Claim 1 is representative:

"In a power actuated unit for transmitting a pulling force to a desired load such as a damaged vehicle or the like via a pulling chain and including an anchor chain secured to an immovable point and having another anchoring end, said unit comprising:

a base which is independent of any connection members to the load to be pulled on other than the pulling chain;

a power actuated ram having first and second ends and arranged to have the distance between said ends axially varied along a predetermined longitudinal axis of the ram itself when actuated;

means for mounting the ram on the base such that axial movement between the ends of the ram is controllably directed along said predetermined axial direction;

means for mounting a pulley on the base, to receive the pulling chain, change its direction, and impart a pulling force on the chain received by the pulley;

means for connecting the pulling chain in relation to the ram such that said axial move-

ment of the ram imparts a force on the pulling chain; and

means for connecting the other anchoring end of the anchor chain in close proximity to the pulley for applying to said unit a restraining force substantially equal to that of the pulling force applied to the load via said pulley when the ram is actuated, whereby the forces exerted on the unit are essentially equalized."

2. § 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

§ 103; or (2) that Hagerty did not commit fraud on the PTO.

## OPINION

### 1. Validity

In resolving the obvious/nonobviousness issue, Judge Kelleher looked to the three factual determinations (scope and content of prior art, differences between prior art and claimed invention, and level of ordinary skill in the art) set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). Kansas Jack challenges here not those determinations, but the legal conclusion based on them.

The relevant prior art includes the Kuhn post, and the patents to Wade, Wylie, Eck, Rothgarn, Grau, and Chartier.

The Kuhn post, *supra,* is a free standing post connected to the load through the pulling chain. Force is provided by a hydraulic ram. A vertically adjustable fulcrum pulley changes the direction of the force. An anchor chain is connected to the floor.

Wade discloses a frame straightening device having a post rigidly secured to a horizontal bottom member. Force is provided by a turnbuckle which connects a car frame to the post through a clevis and pivot pin. A rod connects the pivot pin to a floor anchor.

Wylie discloses a frame straightening device including a post connected to a car frame through a pulling chain. A hydraulic ram is mounted on the post and an anchor chain is connected to the post, to balance the force of the pulling chain and thus eliminate bending moments (forces tending to overturn the device). Vertical adjustment on the post of the ram and chains permits pulls at various heights.

Eck discloses a frame straightening device having a hydraulic ram and a vertically adjustable fulcrum pulley mounted on a post. The pulley receives a pulling chain tensioned by actuating the ram.

Rothgarn discloses a frame straightening device having a hydraulic ram for extending a force pulley at the top of the device. A fulcrum pulley changes the direction of the force. The pulling cable is the only connection between the device and the load.

Grau discloses a hoisting and pulling tool, including a windlass mounted on top of a frame. A fulcrum pulley changes the direction of force and a grapple connects the pulley to a fixed object.

Chartier discloses a frame straightening device having a hydraulic ram mounted on a post and pulling a chain. The chain passes over a fulcrum pulley to change the direction of force. The height of the ram and fulcrum pulley is adjustable.

The Kuhn post, Wade, Wylie, and Eck were found more pertinent than the prior art cited by the PTO.

Judge Kelleher found the differences between the Kuhn post and the claimed invention were two: (1) Hagerty relocated the hydraulic ram from the chain to the post; and (2) Hagerty connected the anchor chain close to the fulcrum pulley, to eliminate bending moments. Difference (1) is disclosed by Wylie, Eck, and Chartier. Difference (2) is disclosed by Wylie, Wade, and Grau.

Judge Kelleher found the level of ordinary skill in the art to be that of a mechanically skilled individual familiar with the design of devices in the industry.

Kansas Jack argues that (1) hypothetical devices were improperly relied upon, (2) the invention was held to have been obvious because it did not produce unusual or surprising results, and (3) so-called "secondary considerations" were disregarded. None of those arguments is persuasive.

■ Drawings of hypothetical devices, created by selecting elements found in various prior art references, were introduced into evidence. To the extent that Hagerty's own disclosure was employed to guide the draftsman, that procedure was an im-

proper employment of hindsight. *In re Pavlecka,* 318 F.2d 339, 343, 50 Cust. & Pat.App. 1406, 138 USPQ 152, 154–55 (1963). The record does not indicate, however, that the obviousness conclusion was dictated by consideration of the sketches of hypothetical devices. On the contrary, Judge Kelleher was careful to note that it was the teachings of the references on which he rested his conclusion, not the hypothetical physical combination of elements in the sketches. Nothing of record would indicate that it would have been nonobvious to employ those teachings. That the teachings relied upon were repeated in a number of references further strengthens the conclusion of obviousness. If, therefore, error occurred in reception of the sketches, that error was harmless. Fed.R.Civ.P. 61.

Kansas Jack attacks this language in the Memorandum of Decision: "[t]he combination of elements in the Hagerty device did not result in an effect greater than the sum of the several effects taken separately [and] [t]he subject matter of the Hagerty device did not produce any new, unusual or surprising results at the time of its invention," saying that language expressed the standard employed in this case for determining patentability.

■ No requirement for "an effect greater" or for "unusual or surprising results" is present in the statute, 35 U.S.C. § 103. The "effect greater" language is but a longer statement of a non-existent requirement for "synergism", *Chore-Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774 at 781 (Fed.Cir.1983). The "results" language would erect as a requirement for patentability, a fact determinable only after the time the invention was made, whereas the focus must be on that time as required by the statute. 35 U.S.C. § 103.

■ Facts determinable at a later time may serve to evidence nonobviousness as of

the time the invention was made. An invention that *did* achieve "an effect greater" or that produced "unusual or surprising results" could of course be held to have been nonobvious in light of those facts. Evidence of such achievements, like evidence of meeting a longfelt need, commercial success, overcoming disbelief, etc., may when present support a conclusion of nonobviousness. *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530 at 1540 (Fed.Cir.1983). Absence of such evidence, on the other hand, does not dictate a conclusion of obviousness. Kansas Jack's difficulty lies precisely there, for Judge Kelleher was not applying *requirements* for "an effect greater" or "unusual or surprising results" as standards for patentability. On the contrary, it is clear on this record that he was merely noting the absence of evidence of such an effect or results, which, had they been present, and as above indicated, might have pointed toward a different conclusion.[3]

■ Respecting objective evidence of nonobviousness ("secondary considerations"), the testimony on disbelief of others and need for simplification was inadequate to warrant Hagerty's desired finding. That that testimony was not mentioned does not mean that it was not considered. Nor was the evidence of commercial success disregarded. On the contrary, Judge Kelleher found that the invention "met with overwhelming commercial success." In so doing, he complied with the basic requirement that *all* evidence touching the obvious-nonobvious issue be fully considered before a conclusion is reached on that issue. *In re Sernaker,* 702 F.2d 989, 996, 217 USPQ 1, 7 (Fed.Cir.1983). In evaluating the commercial success evidence, Judge Kelleher said, "commercial success without invention will not make patentability." That approach was flawed, as explained in *Stratoflex, supra,* at 1538–1539. Nonetheless, it is clear

---

**3.** If, for example, counsel asserts that an invention produced "an effect greater" or "unusual or surprising results," a court's finding that the assertion does not apply to the invention before it cannot be faulted as the application of an improper "standard" or "requirement" for patentability.

on this record that the totality of the evidence is inadequate to require reversal of the obviousness holding. The evidence of commercial success consisted solely of the number of units sold. There was no evidence of market share, of growth in market share, of replacing earlier units sold by others or of dollar amounts, and no evidence of a nexus between sales and the merits of the invention. Under such circumstances, consideration of the totality of the evidence, including that relating to commercial success, does not require a holding that the invention would have been nonobvious at the time it was made to one skilled in the art.

### 2. Fraud

Kuhn appeals from the refusal to hold Hagerty responsible for fraud on the PTO in the hope, explained at oral argument, that a successful motion for attorney fees incurred in the appeal might be filed after prevailing on the issue. No motion for attorney fees was presented to the trial court. Because Kuhn could have raised the fraud issue in its reply brief in Hagerty's appeal, for consideration contingent upon reversal on the validity issue, we need not decide in this case whether standing exists to raise it by way of a separate appeal.

In alleging fraud, Kuhn points to certain of Hagerty's statements during prosecution of the application that resulted in issuance of the Hagerty patent, and to a failure to disclose prior art. The statements alleged a higher level of safety in using the Hagerty device, because the chain and post would not fly about upon breakage or disconnection of the chain from the frame being straightened. Evidence developed for and presented at trial demonstrated the contrary. Kuhn says Judge Kelleher ignored Hagerty's failure to disclose the Kuhn post to the PTO.

 Fraud must be proved by clear and convincing evidence, and the party asserting it carries a heavy burden. *Norton*

*v. Curtiss*, 433 F.2d 779, 797, 57 Cust. & Pat.App. 1384, 167 USPQ 532, 546–47 (1970); *See* Miller, *Fraud on the PTO*, 58 JPOS 271 (1976). The intent element of fraud, however, may be proven by a showing of acts the natural consequences of which are presumably intended by the actor. Statements made with gross negligence as to their truth may establish such intent. *Norton*, 433 F.2d at 795–96, 167 USPQ at 545. The duty of candor owed the PTO being uncompromising, it would deal a deathblow to that duty if direct proof of wrongful intent were required. At the same time, that something thought to be true when stated, or a piece of prior art thought unimportant to the PTO's decision, was later determined to have been untrue or important, will not automatically and alone establish that fraud or inequitable conduct occurred. The fact finder must evaluate all of the facts and circumstances in each case. That was done here.

Kuhn submitted no evidence that Hagerty had any reason, during the prosecution of his application, to disbelieve his statements to the PTO about safety. Proof at trial that those statements may have been objectively untrue, or not universally true, cannot be retroactively employed to establish that they were made with gross negligence as to their truth. That chains and posts flew about in some of Kuhn's tests prepared for trial did not establish or indicate a universality of that phenomenon. If Hagerty's experience with his invention did not indicate that phenomenon, and there is no evidence that it did, it cannot be said that Hagerty was guilty of gross negligence in describing that experience.

 The record does not establish that Judge Kelleher disregarded Hagerty's failure to disclose the Kuhn post to the PTO. On the contrary, he found that Kuhn had failed to show that Hagerty "in misrepresenting ... the prior art ... acted with ... calculated recklessness". On the whole record, "misrepresenting the prior art" had

to include failure to disclose the Kuhn post. Hagerty testified that he had considered the Kuhn post as merely a "car stand" and unrelated to his invention. Judge Kelleher obviously considered that testimony credible even though Hagerty claimed to the PTO his post was the first free standing post. There was no evidence that Hagerty's patent counsel was aware of the Kuhn post during the prosecution of the application in the PTO. Nor is there evidence that Hagerty was trained or experienced in the evaluation of what is and is not prior art. That the Kuhn post, years later, was determined to be prior art, here the closest prior art, does not alone establish that Hagerty should have made a similar evaluation during prosecution of the application. Where one who knew, or should have known, that a piece of prior art, or other information, would be material, i.e., important to the PTO in making its decision, a failure to disclose that art or information can be sufficient proof that a wrongful intent existed to mislead the PTO, and may result in a finding of what has come to be called "fraud" on the PTO. The fact finder, however, must determine not only that the undisclosed art or information was material, but that the one charged with non-disclosure knew or should have known of its materiality at the time. It is on this latter element that Kuhn failed to carry its burden.

Kuhn attacks words in the finding on fraud, asserting that a reference to "scienter" and "calculated recklessness" indicates a failure to apply the "gross negligence" standard of *Norton, supra.* We review judgments, however, not words. Judge Kelleher's statement in the finding that Kuhn failed to prove "calculated recklessness" does not establish that Kuhn did prove "gross negligence", nor does it establish on the whole record that an improper standard was in fact applied in evaluating the evidence, nor does it constitute reversible error on this record.

In sum, Judge Kelleher found the evidence insufficient to support a holding of fraud. We are presented on Kuhn's appeal with no adequate reason for overturning that determination.

### DECISION

The appealed judgment is affirmed in all respects.

AFFIRMED.

RICH, Circuit Judge, dissenting in part.

I agree with the majority opinion except for that part of the "Fraud" section holding that failure by the applicant, Hagerty, to disclose his knowledge of the Kuhn post to the PTO was not sufficient evidence to support a holding of fraud. If it is true that his attorney was unaware of the Kuhn post, that is irrelevant. The responsibility rested on Hagerty to tell his attorney. It is also irrelevant that Hagerty was not "trained or experienced in the evaluation of what is and is not prior art." It is incredible to me that Hagerty did not know that the Kuhn post was the closest thing to his invention whether or not he was a legal expert on the refined meanings of "prior art."