**Ben W. VANDENBERG, August Vandenberg, and Andrew W. Vandenberg, and Vandenberg, Manufacturing Company, Inc., Appellants/Cross-Appellees,**

v.

**DAIRY EQUIPMENT CO., A DIVISION OF DEC INTERNATIONAL, INC., Appellee/Cross-Appellant.**

**Appeal Nos. 83–1400, 83–1420.**

United States Court of Appeals, Federal Circuit.

July 27, 1984.

---

Morton J. Rosenberg, Columbia, Md., for appellants/cross-appellees.

Paul R. Puerner, Milwaukee, Wis., for appellee/cross-appellant.

Before DAVIS, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

SKELTON, Senior Circuit Judge.

This is an appeal under 28 U.S.C. § 1295(a)(1) from a final decision of the United States District Court for the Western District of Wisconsin, declaring United States Patent No. 3,962,575 ('575), owned by appellants/cross-appellees Ben W. Vandenberg, August Vandenberg, and Andrew W. Vandenberg (appellants), invalid for obviousness under 35 U.S.C. § 103. The district court denied the request for attorney's fees of appellee/cross-appellant Dairy Equipment Company (DEC).

We affirm the district court's determination of invalidity insofar as it concerns Claims 1 and 3 of the '575 patent. However, we reverse the decision of the court as to Claim 2, which was not at issue below. We also affirm the denial of DEC's request for attorney's fees.

## I. BACKGROUND

The '575 patent, issued to appellants on June 8, 1976, involves a radial arm milk hose support used to support the hoses which connect the milk receiving pipe system to the milking apparatus attached to a cow in a dairy operation. The support helps to maintain the proper tension on the hoses. Figures 4 and 5 of the patent are reproduced below with nonessential reference numerals deleted.

Fig. 4.

Fig. 5.

---

The device defined by the claims at issue (1 & 3) is comprised of a plastic ball 16 having a sleeve 28 and a pair of plastic socket members 18 clamped on the ball by an adjustment bolt 20 passing through the socket members. The ball is supported by a bolt passing through the ball and the sleeve, thus securing the ball to a mounting device 60 around a mounting rail 38. A hanger arm 10 is clamped between the ends of the socket members. The device is used by moving the hanger arm to the desired position relative to the cow to be milked. The arm remains in the desired position due to the frictional engagement of the socket members on the ball. The frictional engagement is adjustable by means of the adjustment bolt.[1]

**1.** Claim 1 of the '575 patent is as follows:

1. In a radial arm milk hose support construction for supporting milk hoses of automatic milkers at the cow stalls: the combination of: a generally vertically downwardly projecting milk hose support arm supported projecting generally downwardly from a generally horizontal cow stall mounting rail and having hose engagement means at a lower end portion thereof for transversely engaging and supporting milk hoses connected to an automatic milker claw; universally selectively adjustable arm clamping means mounted between an upper end of said support arm and said generally horizontal cow stall mounting rail including a rigid self-lubricating plastic ball member secured to said cow stall mounting rail by a mounting bolt extending diametrically upwardly through said ball member and upwardly generally to said cow stall mounting rail, a sleeve

The use of support systems increased in the mid-1960's with the advent of the herringbone milking system, in which cows are milked in stalls arranged in a herringbone pattern around a central pit from which the farmer can attach and remove the milking device. In 1967, appellants introduced an improved milk hose support, which will be referred to as PX–15. This device utilized a system of flat metal plates with fiberboard clutchplates to achieve the desired movement. Appellants attempted to patent this system, but because the device had been on the market more than one year before they consulted counsel, they were advised that they could not obtain a patent.

Appellants developed the device which is the subject of this suit in 1974, using molded high-grade nylon in the manufacturing process and a ball and socket joint for rotation instead of flat metal plates. The use of high-grade plastic eliminates the need to lubricate the parts and also provides resistance to the corrosive conditions found in the high humidity environment of a milking parlor. The use of the ball and socket joint allows almost universal movement of the hanger arm.

DEC also manufactured and sold a support system that employed flat metal plates and fiber clutchplates to provide radial motion. During the 1970's, DEC attempted at various times to improve its design. In 1980, an engineering technician at DEC, Jack Johnson, was assigned the specific task of designing a new system. He eventually obtained a copy of one of appellants' patented devices, which he used in designing a milk hose support system for DEC. This system differs from appellants' system only in a few insignificant particulars. Appellants brought suit soon after this device appeared on the market, alleging infringement of their '575 patent. DEC defended by contending that the '575 patent was invalid for obviousness, and the district court agreed.

## II. OBVIOUSNESS

Appellants contend that the district court erred in holding the '575 patent obvious under 35 U.S.C. § 103. The test for determining obviousness is well known from the case of *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966):

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved need, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. [383 U.S. at 17–18].

■■■ In making its determination a court must view the prior art without reading into that art the patent's teachings, *In re Sponnoble*, 405 F.2d 578, 585, 160 USPQ 237, 243 (CCPA 1969), and must analyze and consider the references as a whole, *In re Shuman*, 361 F.2d 1008, 1012, 150 USPQ 54, 57 (CCPA 1966). Furthermore, once a patent has been issued, it is presumed valid, and the burden of persuasion on the issue of obviousness is placed upon the party asserting invalidity. 35 U.S.C. § 282.

---

telescoping said mounting rail between said ball member and said cow stall mounting rail, a socket member formed of two transversely separable rigid self-lubricating plastic socket member halves upwardly transversely socket telescoping said ball member and downwardly transversely telescoping said support arm upper end, adjustment bolt means extending transversely through said socket member halves positioned vertically between said mounting bolt and said support arm upper end for transversely clamping said socket member halves over said support arm upper end and for frictionally engaging said socket member halves over said ball member permitting said universal adjustment therebetween to adjust and frictionally retain said support arm in all selected downwardly extending directions relative to said cow stall mounting rail.

Appellants point to certain language in the district court's opinion which they contend demonstrates that the court misapplied the above rules of law. Specifically, the district court stated:

> *Graham v. John Deere Co.*, 383 U.S. 1 [86 S.Ct. 684, 15 L.Ed.2d 545] (1966) channels the initial inquiry into the issue of obviousness: courts are to evaluate the scope and content of the prior art, determine what differences there are between the prior art and the claims of the patent at issue, if any, and determine the level of ordinary skill in the relevant art at the time of the invention. *Graham* provides a mode of analysis that focuses on the essential question but does not answer it. The court is still faced with the task of deciding whether the progression from the known to the unknown was easy and obvious to the ordinary-skilled worker or whether it required "something akin to genius." *Vandenburg v. Dairy Equipment Co.*, No. 82–C–194–C, slip op. 10 (W.D.Wis. Aug. 17, 1983).

■ Tests which call for an inquiry into the "genius" revealed by a particular device are no longer viable. *Graham*, 383 U.S. at 15, 86 S.Ct. at 692.[2] However, we do not believe that this unfortunate lapse into a bygone era tainted the court's decision. It is evident from the court's opinion that its analysis was structured according to the requirements of *Graham*. The necessary factual determinations were made, and against that background the court made its determination of obviousness. We do not believe that the mere reference to "genius" requires reversal of the court's opinion when it is clear that the dictates of *Graham* were followed.

■ In any event, obviousness is a question of law based upon findings of fact which are subject to the "clearly erroneous" standard. Fed.R.Civ.P. 52(a); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed.Cir.1983). That the court may have used "flash of genius" language is ultimately of no consequence

on this appeal. We are still bound by its factual findings made under the *Graham* analysis unless clearly erroneous, and we are still free to arrive at our own conclusion on the issue of obviousness based upon those findings, keeping in mind the presumed validity of the patent. To that task we now turn our attention. *Gardner v. TEC Systems*, 725 F.2d 1338, 220 USPQ 777 (Fed.Cir.1984).

## A. Scope of the Prior Art:

The district court relied upon prior art references different than those relied upon by the Patent Examiner because it found the references it relied upon to be more pertinent. The court relied upon appellants' earlier device, PX–15; Sorenson, U.S. Patent No. 1,036,739; Draeger, U.S. Patent No. 1,978,859; and Melton, U.S. Patent No. 3,342,513. The PX–15 device, as mentioned previously, was a milk hose support system featuring universal adjustment and frictional holding capability through the use of metal plates and clutchplates. Sorenson discloses a hanger for supporting an incandescent lamp, utilizing a universally adjustable ball and socket joint and an adjustment bolt. The Sorenson device is claimed broadly and the patent includes a recitation that it may be used for purposes other than a lamp hanger. Draeger discloses a trailer hitch employing a ball and socket joint in which the fastening bolt passes through the ball itself. Melton discloses a ball and socket joint constructed of high density synthetic resin, eliminating the need for lubrication.

Appellants argue that the art relied upon by the Patent Examiner was more pertinent than that relied upon by the district court, and that some of the art relied upon by the court was nonanalogous. Without taking the time to list the references cited by the Examiner, suffice it to say that we do not find the district court's treatment of the prior art to be in error. The appellants' own prior support system, PX–15, was cer-

---

**2.** *See also* last sentence of 35 U.S.C. § 103: "Patentability shall not be negatived by the manner in which the invention was made."

tainly pertinent and analogous art. There was also expert testimony to the effect that Sorenson was the single most pertinent reference. In addition, all of the ball and socket patents relied upon by the district court, together with the '575 patent, are classified by the Patent and Trademark Office under the heading "Joints, Ball and Socket," and they all disclose a structure which performs the same basic function; *i.e.*, universal action between ball and socket parts.

In any event, the issue here is not which references are more pertinent, but whether DEC has overcome the statutory presumption of validity that attaches to every patent. The citation of more pertinent art does not shift this burden, although it may make it more easily carried. *Lear Siegler, Inc. v. Aeroquip Corporation, et al.,* 733 F.2d 881, 221 USPQ 1025 (Fed.Cir.1984). *Solder Removal Co. v. U.S. International Trade Comm.,* 582 F.2d 628, 633, 199 USPQ 129 (CCPA 1978). We will rely upon the same references relied upon by the district court in our analysis of the basic issue.

**B. *Differences Between the Prior Art and the Patented Device:***

■ The patented device differs from its predecessor, PX–15, in the use of a ball and socket joint molded from high-grade plastic in which the ball is secured by a transverse bolt. The prior device did make use of self-lubricating plastic in some of its parts. The claimed invention differs from Sorenson in its use of high-grade self-lubricating nylon for the joint; and in its use of a bolt passing through the ball to support the device. The use of a bolt passing through the ball is supplied by Draeger, and the use of self-lubricating material in the construction of the ball and socket parts is disclosed in Melton. Thus, all of the elements in the claimed invention are disclosed in the prior art, the only difference being the combination in one device of these elements. However, the invention *as a whole* must have been obvious to one skilled in the art at the time it was made, and, in order to combine the teachings of the prior art references, the prior art must suggest the desirability

of the combination. *Lear Siegler, supra; In re Imperato,* 486 F.2d 585, 587, 179 USPQ 730, 732 (CCPA 1973).

**C. *The Level of Skill in the Art:***

■ Appellants argue that the district court used an incorrect standard for determining the level of skill in the art. The court found that "the level of skill is that of a person who has either an undergraduate degree in mechanical engineering or four years of technical training in mechanics." Reference to the educational background and experience of those actively involved in the art is proper in determining the level of skill. *Jacobson Brothers, Inc. v. United States,* 512 F.2d 1065, 1071, 185 USPQ 168 (Ct.Cl.1975).

The evidence adduced at trial supports the district court's finding that the level of skill in the art was relatively high. The engineering staff at DEC included several people with Bachelor's degrees in engineering. Jack Johnson, who worked on DEC's alleged infringing device, had four years of training in machinery at a technical school. Appellant Ben Vandenberg had over 20 years of experience in designing and developing dairy equipment when he helped develop the device covered by the '575 patent.

Furthermore, the district court found that at the time Jack Johnson was assigned the task of developing a new system for DEC, the engineering staff at DEC had independently made a design sketch of a plastic milk hose support using a ball and socket joint. Johnson's testimony reveals that he also had been working on his own prototype of a support using a ball and socket joint when he first saw the Vandenberg device. This suggests that those involved in the development of milk hose supports were familiar with all of the basic concepts disclosed in the '575 patent, and the evidence as a whole indicates that the level of skill in the art was quite high.

**D. *Secondary Considerations:***

■ Appellants contend that the district court did not give sufficient weight to such "secondary considerations" as commercial

success, long-felt need, and the failure of others. In determining the question of obviousness, inquiry should always be made into whatever objective evidence of nonobviousness there may be. *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1549, 220 USPQ 193, 199 (Fed.Cir.1983). The so-called "secondary considerations" can often prevent a court from slipping into an impermissible hindsight analysis. They should be considered as a *fourth* factual inquiry under *Graham* before coming to a conclusion concerning obviousness. *Connell, id.; Stratoflex*, 713 F.2d at 1538, 218 USPQ at 879.

The evidence does indicate that appellants' device achieved a certain amount of acceptance in the market place, with sales peaking at $192,000 in 1980. As the district court pointed out, however, appellants failed to show how sales of the patented device compared to sales of their previous model, or what percentage of the market their new model commanded. Whatever success the device achieved might be due to the increased use of herringbone milking systems. A nexus must be established between the merits of the claimed invention and the evidence of commercial success before that issue becomes relevant to the issue of obviousness. *Solder Removal*, 582 F.2d at 637, 199 USPQ at 137; *In re Felton*, 484 F.2d 495, 501, 179 USPQ 295 (CCPA 1973). The appellants have failed to show such a nexus.

As for long-felt need, the evidence is even less substantial. There is no showing that the industry was very concerned with the problem involved here. We find no clear error in the district court's finding of no long-felt need.

There is one aspect of the evidence, however, that at first appears to weigh rather heavily in appellants' favor. Appellants accuse DEC of "slavishly copying" their patented device after being unable to design a satisfactory system on their own. Indeed, the evidence shows that after Jack Johnson was assigned the task of designing a support system for DEC in 1980, he became aware of the '575 patent, and ultimately used the exact dimensions from that patent in designing DEC's system. The copying of an invention may constitute evidence that the invention is not an obvious one. *Troy Co. v. Products Research Co.*, 339 F.2d 364, 367, 144 USPQ 51, 53 (9th Cir.1964), *cert. dismissed*, 381 U.S. 930, 85 S.Ct. 1762, 14 L.Ed.2d 689 (1965). This would be particularly true where the copyist had itself attempted for a substantial length of time to design a similar device, and had failed.

There are several reasons, however, why this principle should not be a decisive factor in this case. First, while DEC had worked on a new design for a support system for several years, the district court found that the project was given a low priority. DEC employees would from time to time submit proposed improvements for milk hose supports, but there is no evidence of a concerted effort to design a new device until Jack Johnson was given the task in 1980.

Second, DEC's efforts cannot be characterized as total failures with respect to the question of obviousness. Although no commercially viable system was designed, DEC engineers did sketch a design for a plastic support device using a ball and socket joint prior to assigning the task to Johnson, as noted above. This would tend to suggest that the basic concepts employed by the '575 patent were obvious to those skilled in the art.

Third, appellants' accusation of "slavish copying" overstates the case. Johnson testified that not only had DEC engineers sketched a ball and socket design prior to 1980, but that he himself had begun working on a prototype employing a ball and socket joint before becoming aware of the '575 patent. After learning of the patent, he incorporated the dimensions (which were not claimed) from the device corresponding to the '575 patent into his own design. Viewed in this context, the copying of the '575 patent may be construed as an admission that appellants' device was perhaps mechanically superior to DEC's own device, but it is not strong evidence of nonobviousness. The basic concept of the

invention occurred independently to DEC's staff.

■ After considering all of the evidence, we conclude that Claims 1 and 3 of the '575 patent are invalid for obviousness under 35 U.S.C. § 103. In light of the factual determinations discussed above, we are satisfied that the district court correctly held that the claimed invention as a whole would have been obvious to one skilled in the art at the time the invention was made, especially in light of the relatively high degree of skill in the art. We are persuaded that it would have been obvious to the hypothetical person of ordinary skill in the art, with the PX–15 model in front of him, to improve it by employing a ball and socket joint to obtain more universal motion, just as DEC engineers independently designed a system using such a means of rotation. A review of the art of ball and socket joints would have led a worker in the art to Sorenson, which clearly suggests the applicability of adjustable ball and socket joints to milk hose supports. From there, it would have been obvious from the teachings of Draeger and Melton to support the joint with a bolt passing through the ball and to use self-lubricating plastic to construct the joint. Thus, the prior art clearly teaches and suggests the combination of all the elements found in the '575 patent. DEC has met its burden of persuasion and has rebutted the statutory presumption of validity that attached to Claims 1 and 3 of the '575 patent.

## III.  CLAIM 2

■ In its opinion, the district court noted that only Claims 1 and 3 of the '575 patent were at issue in this case. However, in its Order, it declared the entire '575 patent, Claims 1, *2*, and 3, invalid and unenforceable. This may have been an oversight on the part of the court, but, nonetheless, it was error. Each claim must be presumed valid independently of the validity of any other claim. 35 U.S.C. § 282; *Connell*, 722 F.2d at 1552, 220 USPQ at 201. Moreover, DEC agreed to a reversal on Claim 2 in oral argument. The holding of the district court of invalidity is reversed as to Claim 2 of the '575 patent.

## IV.  CROSS–APPEAL

DEC contends that the district court erred in denying it attorney's fees under 35 U.S.C. § 285. DEC alleges that appellants failed to disclose their PX–15 device as prior art to the Patent and Trademark Office (PTO), thus making them guilty of fraud on the PTO and making this an exceptional case under § 285. DEC further alleges that appellants' appeal is frivolous and should be dismissed.

■ In order to establish fraud on the PTO, the party asserting it must show by clear and convincing evidence that there was an intentional misrepresentation or a withholding of a material fact from the PTO. *Driscoll v. Cebalo*, 731 F.2d 878, 221 USPQ 745 (Fed.Cir.1984); *Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383, 217 USPQ 1281 (Fed.Cir.1983). The party asserting fraud assumes a heavy burden. *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151, 219 USPQ 857 (Fed.Cir.1983). The intent element of fraud, however, may be proven by a showing of acts the natural consequences of which are presumably intended by the actor. *Kansas Jack*, 719 F.2d at 1151, 219 USPQ at 861.

■ The district court did find that appellants failed to disclose their PX–15 device to the PTO, and the court's reliance upon that device in its opinion demonstrates its materiality as a reference. Furthermore, the court opined that, had the Patent Examiner known of the PX–15 device, it is "highly doubtful" that a patent would have issued.

Nevertheless, the court held that no fraud had been committed, and we find no error therein. The proof here falls short of the clear and convincing evidence needed to prove fraud. Even though appellants did not disclose the PX–15 device as their own, they did describe it in column 1 of their patent application as prior art, a fact admitted by DEC's own expert witness and in DEC's brief. This disclosure is inconsistent with intent to perpetrate fraud on the PTO.

In addition, the district court's statement that it is "highly doubtful" that a patent would have issued had the PX–15 device been fully disclosed is not a strong enough finding upon which to base a holding of fraud. This is a far cry from the situation in *Driscoll, supra,* relied upon by DEC. There, the Board of Patent Interferences made specific findings that a certain material patent had been withheld from the Examiner; that "any reasonable Examiner *would have rejected* the claim as being unpatentable" over the withheld patent (emphasis added); and that there was gross negligence, "if not specific intent to deceive," in failing to disclose the patent. Notwithstanding these findings, the Board found no fraud, and this Court reversed. We are not faced with the same clear and convincing evidence or the same strong findings that were before this Court in that case. Although appellants' actions may raise a suspicion of misrepresentation, we cannot base a holding of fraud on suspicion.

As to DEC's final contention of the alleged frivolous nature of this appeal, we do not hesitate to hold that the appeal was justified. Appellants sued on a validly issued patent and may protect their rights under that patent to the full extent of the law. We have held in favor of appellants on Claim 2 of the '575 patent, and it is difficult to hold that an appeal is frivolous when it is partially successful. In addition, appellants presented several close questions requiring careful analysis. This contention of DEC is without merit.

In summary, the decision of the district court that Claims 1 and 3 of the '575 patent are invalid and unenforceable under 35 U.S.C. § 103 is *affirmed.* The decision that Claim 2 is invalid and unenforceable is *reversed.* The denial of DEC's request for attorney's fees is *affirmed.* Each party shall bear its own costs on appeal.

AFFIRMED IN PART; REVERSED IN PART.