AEA TECHNOLOGY, PLC, Plaintiff,

v.

THOMAS & BETTS CORP., Defendant.

No. 99 C 8157.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 28, 2001.

Marshall, O'Toole, Gerstein, Murray & Borun, Chicago, IL, for plaintiff.

Jenner & Block, Chicago, IL, for defendant.

### ORDER.

ROSEMOND, United States Magistrate Judge.

Before the Court are the *Motion to Strike Declaration of Keith Rodney Mansell* and *Thomas & Betts' Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct.* For the reasons that follow, the *Motion to Strike Declaration of Keith Rodney Mansell* is **granted in part** and **denied in part**. *Thomas & Betts' Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct* is **denied**.

### STANDARD.

On a motion for summary judgment, the burden is on the moving party to demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] The trial court should determine whether a genuine issue for trial exists, drawing all justifiable inferences in favor of the nonmoving party.[2]

Factual disputes are only material if they "might affect the outcome of the suit under the governing law."[3] A failure to make a showing on an essential element of the case by the nonmoving party entitles the moving party to judgment as a matter

of law.[4] Factual disputes are only genuine "if the evidence is such that a reasonable jury could return a verdict for the [nonmovant]."[5] At the summary judgment stage, the court may consider pleadings, depositions, interrogatory answers, admissions on file, and affidavits.[6]

### BACKGROUND.

In this case, AEA Technology ("AEA") alleges infringement of two United States Patents: Numbers 4,302,518 ("518 patent") and 4,357,215 ("215 patent") by Thomas & Betts ("T & B"). In the *Motion for Summary Judgment,* T & B argues that the 518 patent and the 215 patent are unenforceable due to alleged inequitable conduct. The parties and the Court agree that jurisdiction is proper in this Court and in this District.

A great majority of the facts are undisputed in this case. Where the parties dispute a fact it will be clearly noted. The 518 patent was issued on November 24, 1981. The 215 patent was issued on November 2, 1982. The parties agree on the authenticity of the copies of the 518 and 215 patents and prosecution histories, with the exception that AEA states that the front page is missing from the copy of the 518 patent. Both patents relate to lithium ion technology.

Every claim of the AEA patents requires "having layers of the $\alpha$–$NaCrO_2$ structure." AEA filed the initial patent application for the 518 patent on March 31,

---

1. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. at 323, 106 S.Ct. 2548; *Woods v. City of Chicago,* 234 F.3d 979, 985–86 (7th Cir.2000).

2. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. *Oest v. Illinois Dept. of Corrections,* 240 F.3d 605, 610 (7th Cir.2001)(*quoting Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

4. *Oest,* 240 F.3d at 610 (*citing Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

5. *Oest,* 240 F.3d at 610 (*quoting Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

6. FED.R.CIV.P. 56(c); *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Freedom From Religion Foundation, Inc. v. Bugher,* 249 F.3d 606, 610 (7th Cir.2001); *Ulichny v. Merton Comm. School Dist.,* 249 F.3d 686, 699 (7th Cir. 2001).

1980. AEA's March 31. 1980 USPTO application was Serial No. 135,222. The USPTO entered a "restriction requirement" on September 4, 1980 in connection with application Serial No. 135,222. In response to the restriction requirement, AEA elected one group of claims to prosecute in patent application Serial No. 135,222, and filed a divisional patent application, application Serial No. 259,104, to prosecute the remaining group of claims. AEA filed the patent application for the 215 patent on April 30, 1981. The USPTO rejected Claim Nine of the application for the 518 patent in light of United States Patent No. 3,970,473 ("the Roth patent"). The USPTO said that Claim Nine of the application for the 518 patent was obvious in light of the Roth patent.

AEA responded to this rejection by distinguishing the structure of its claimed invention from the structure of the invention claimed in the Roth patent by characterizing AEA's claimed invention as having the $\alpha$–$NaCrO_2$ structure as opposed to the Roth patent's "tunnels". The USPTO subsequently allowed the claims of the 518 patent. Patent application Serial Nos. 135,222 and 259,104 issued as the 518 patent and the 215 patent respectively. The 518 patent and the 215 patent were issued by the USPTO to John B. Goodenough and Koichi Mizushima. The 518 patent and the 215 patent were assigned to the United Kingdom Atomic Energy Authority by an assignment that was recorded at the USPTO on January 26, 1984. The 518 patent and the 215 patent were assigned by the United Kingdom Atomic Energy Authority to AEA by an assignment that was recorded at the USPTO on March 3, 1997.

An authentic copy of the prosecution history for European Application Serial No. 80300876.2 is attached at tab six. AEA filed a patent application on March 20, 1980 ("the European Application") with the European Patent Office ("the EPO").

AEA's March 20, 1980 European Application was Serial No. 80300876.2. AEA's March 20, 1980 European Application was entitled "Improvements in or Relating to Fast Ion Conductors." On July 23, 1980, the EPO examiner performed a prior art search.

The EPO mailed the results of its prior art search to AEA on August 14, 1980 ("the European Search Report"). The EPO examiner found several relevant references and listed those references in his July 23, 1980 report. Two of the references cited to AEA by the EPO examiner were listed as being "particularly relevant." The "particularly relevant" references were designated as "Category X." The Category X references are German Patent No. 2 614 676 ("the German reference") and Japanese Patent Application No. SHO 50[1975]—91772 ("the Japanese reference").

The EPO examiner designated that the German reference would prevent patentability of AEA Claim One. The EPO examiner designated that the Japanese reference would prevent patentability of AEA Claim Nine. The EPO examiner also listed the Roth patent in his search report, but he categorized the German reference and the Japanese reference as more relevant than the Roth patent.

AEA never provided the European Search Report to the USPTO. AEA never informed the USPTO of the results of the EPO's prior art search. AEA never informed the USPTO of the Category X references. AEA never informed the USPTO of the EPO's initial rejection of EPO application Serial No. 80300876.2. The parties dispute whether the EPO examiner rejected six or eight of the ten claims. The EPO examiner rejected at least two of the ten claims of AEA's EPO application because of the Category X references. Claim One of the European Ap-

plication was rejected in light of the German Patent No. 26 14 676. The EPO examiner stated: "Thus, Claim 1 is not allowable under Article 52(1) for lack of novelty in view of the disclosures of [the German reference]." The parties agree that Claim 1 of the European Application was rejected in light of the Japanese Application. The parties dispute whether Claim 9 was rejected in light of the Japanese Application. The EPO examiner stated: "[I]t should be noted that the subject of Claim 9 is not clearly distinguished from the disclosure of [the Japanese reference]."

AEA responded to the EPO's rejection of the European Application by amending its application. In AEA's amended application, AEA deleted all of its original claims and replaced them with five new claims. AEA admitted that German Patent No. 26 14 676 revealed a "layered" structure. AEA stated:

> The pertinent portion of [the German reference] is on page 5 . . . Compositionally such oxides embrace the ion conductors in the present claims, but it is less clear that they embraced them *structurally*. Thus, whilst the oxides in the reference are said to have a layer structure, it is not stated that they have the ¥–$NaCrO_2$ structure required in the applicants' claims.

The European Patent Application, as amended, issued as European Patent No. 0 017 400.

In responding to the EPO Office Letter in which Claims One through Five were rejected in view of the Delmas (German) patent, Mr. Mansell stated:

> It would seem appropriate, however, to comment on the relevance of reference (1) [the Delmas patent]. The pertinent portion of this is on page 5 where lamelliform oxides of the type $A_z(RO_2)$ are said to be known. *Compositionally* such oxides embrace the ion conductors

in the present claims, but it is less clear that they embrace them *structurally*. Thus, whilst the oxides in the references are said to have a layer structure, it is not stated that they have the α–$NaCrO_2$ structure required by applicant's claims. Also, it is not stated how the oxides could be made over a wide range of values of z nor indeed that they had been made over a wide range. The applicant's own knowledge of the art, as acknowledged on page 1 of the description, is that only layer oxides where z lied between 0.9 and 1 had been prepared before the applicant's priority date and that the preparation was by a high temperature method. Instability factors prevented oxides with lower z values from being made by high temperature methods.

In that same response, Mr. Mansell stated:

> The battery described in reference (2) [the Japanese reference] is distinguished from the cell of claims 1 to 3 in a number of respects . . . Secondly, the reference describes making $Li_{0.4}WO_2$ by heating at 700°C for 15 hours. This means that the cathode described in the reference is structurally different from the electrode in the claims since the α–$NaCrO_2$ layer structure of the latter is not stable at high temperatures for cation deficient systems, i.e. the $Li_{0.4}WO_2$ in the reference and presumably cathodes of the formula LixWO2 having other values of × do not possess the α–$NaCrO_2$ layer structure.

In its response to the PTO dated February 26, 1981 in the 518 prosecution, with regard to the Roth reference, applicant stated:

> However, the claims are clearly outside of Roth's disclosed materials structurally. Thus, the electrode materials of claim 9 recite the α–$NaCrO_2$ layer struc-

ture, i.e., a sandwich-type structure in which a layer of monovalent cations intervenes between layers of anions to constitute the sandwich. In contrast, in the cathode materials of Roth, the cations ($Li^+$) occupy tunnels. (See column 4, lines 17–35 and, in particular, line 30). There are particular problems, e.g. of reversability, in the electrochemical use of compounds having a tunnel structure. Such problems may, for example, be of a spatial nature invovling [sic] the problems of maintaining integrity of crystal structure. It is considered that the present electrode material has effectively met these problems. Therefore, the claims are considered to be clearly patentable over the prior art.

The specifications of the 215 and 518 applications are substantively identical and that of the EPO application is substantively identical also. A declaration of Mr. Keith Mansell, the patent attorney for AEA's predecessor in interest in the AEA patents, is provided in the Appendix under Tab One. Mr. Mansell was responsible for prosecuting the 518 and 215 patent applications, through U.S. counsel, and was responsible for prosecuting the European patent application himself.[7]

Mr. Mansell was not "forced" to amend the claims of the EPO application in response to the Examiner's rejection of the claims. The facts related to Dr. Peter Bruce have been omitted for reasons stated in the inequitable conduct section.

In an Office Action mailed December 17, 1981, the PTO Examiner rejected claims 6–8 of the 215 application stating: "applicants admit p.4, par.1 certain compounds

$A_xM_yO_2$ where $\times$ is approx. equal to 1 are known." A true and correct copy of the Delmas thesis is provided in the Appendix under Tab 6.[8]

### DISCUSSION.

### I. Paragraphs six through nine of the Declaration of Keith Rodney Mansell ("the Declaration") are stricken.

■ T & B persuasively argues that these portions of the Declaration of Keith Rodney Mansell ("the Declaration") should be stricken as speculative. In paragraph six of the Declaration, Mr. Mansell admits that he is "unable to remember" the circumstances and reasons that the European Search Report and references were not brought to the attention of the USPTO. Paragraphs seven, eight, and nine all contain speculative generalizations which are essentially useless with respect to intent. For these reasons, because paragraphs six through nine of the Declaration do not comply with Federal Rule of Civil Procedure 56(e), they are stricken.

### II. Although a significant amount of evidence supporting inequitable conduct currently exists, it is insufficient for the Court to grant summary judgment in light of the clear and convincing standard.

Patent applicants and their representatives are required to prosecute patents with candor, good faith, and honesty.[9] A breach of this duty requires a finding of inequitable conduct.[10] Inequitable conduct can include "affirmative misrepresentation

---

7. Paragraphs 7–9 of AEA's LR 56.1(b)(3)(B) will not be considered in the *Motion for Summary Judgment* for the reasons stated in Section I of the Discussion.

8. The parties also dispute AEA's LR 56.1(b)(3)(B) ¶ 15. However, the Court will not address this dispute because it is unneces-

sary to the resolution of the *Motion for Summary Judgment*.

9. *E.g. Molins, PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995).

10. *Id.*

of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." [11] The party alleging inequitable conduct with respect to a failure to disclose prior art

> must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant's failure to disclose the prior art, coupled with and intent to mislead the PTO.[12]

Once threshold findings of materiality and intent are established, the Court must balance the equities to determine whether inequitable conduct existed.[13] All of the circumstances must be considered and the Court must make a judgment that "the applicant's conduct is so culpable that the patent should not be enforced." [14]

### a. The information and references from the European Search are clearly material.

■ Information is "material" if "there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." [15] The standard for material is not subjective, but rather is the perspective of a reasonable examiner.[16] Applicants are required to bring any material prior art cited or brought to their attention in a foreign application to the attention of the USPTO.[17]

From the perspective of a reasonable examiner, the information and references from the European Search was undoubtedly material. Strong evidence that the information was material is the undisputed fact that the EPO initially rejected several of AEA's claims and AEA subsequently amended its application, deleting *all* of its original claims and replacing them with five new claims. The European examiner clearly found the information to be material and this is extremely strong evidence that a reasonable examiner would find likewise.

### b. On the record before the Court there is no clear and convincing evidence of intent to deceive.

■ Direct evidence is not required to prove intent.[18] Intent is most frequently proven "by a showing of acts, the natural consequences of which are presumably intended by the actor." [19] Intent is generally inferred from the "facts and circumstances surrounding the applicant's conduct." [20] "Clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required" because forfeiture of enforceability is *a disfavored action.*[21] Gross negligence alone is insufficient to find intent to deceive.[22]

---

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.* at 1179.

16. *Id.* at 1179.

17. *Id.* at 1180.

18. *Id.* at 1180.

19. *Id.* at 1180 (*citing Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1151 (Fed.Cir.1983)).

20. *Id.* at 1180 (*citing Paragon Podiatry Lab., Inc., v. KLM Lab., Inc.,* 984 F.2d 1182, 1189–90 (Fed.Cir.1993)).

21. *Id.* at 1181 (*quoting Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 939 (Fed. Cir.1990)).

22. *Id.* at 1181 (*citing Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.,* 863 F.2d 867, 876 (Fed.Cir.1988)).

The record does not support a finding that there is clear and convincing evidence of intent to deceive. Clear and convincing is a difficult standard to meet. There is no direct evidence of intent. There is no doubt that the information and references from the European Search should have been revealed to the USPTO. The failure to do so was gross negligence at a minimum. However, the current evidence falls short of the clear and convincing threshold. As T & B argues, the Court recognizes that materiality and intent are intertwined and as the level of material information increases, the level of intent that must be established is reduced.[23] Therefore, if T & B can present experts at the trial stage demonstrating that the non-disclosures are even more material than they now appear from the record, then T & B might succeed on the Inequitable Conduct argument.

Because we already find in favor of AEA on the *Motion for Summary Judgment*, it is unnecessary to discuss or consider the statements of Dr. Peter Bruce.

***Accordingly, it is adjudged, decreed and ordered as follows:***

1. The *Motion to Strike Declaration of Keith Rodney Mansell* is **granted** with respect to paragraphs six through nine and **denied** with respect to the rest of the Declaration.

2. *Thomas & Betts' Motion for Summary Judgment of Unenforceability Due to Inequitable Conduct* is **denied**.

***So Ordered.***

**23.** *Perseptive Biosys., Inc. v. Pharmacia Biotech, Inc.,* 225 F.3d 1315, 1319 (Fed.Cir. 2000).