**N.V. AKZO, Aramide Maatschappij v.o.f., Appellant/Cross-Appellee,**

v.

**E.I. DUPONT de NEMOURS, Appellee/Cross-Appellant.**

**Appeal Nos. 86–1327, 86–1358.**

United States Court of Appeals, Federal Circuit.

Feb. 5, 1987.

C. Frederick Leydig, Leydig, Voit & Mayer, Ltd., Chicago, Ill., argued for appellant/cross-appellee. With him on the brief were Charles S. Oslakovic, John Kilyk, Jr., Norval B. Galloway and Robert F. Green, Leydig, Voit & Mayer, Ltd., of counsel. Also on the brief were Denis McInerney and P. Kevin Castel, Cahill, Gordon & Reindel, New York City and Robert H. Falk, Hubbard, Thurman, Turner & Tucker, of Dallas, Tex.

Joseph Fitzpatrick, Fitzpatrick, Cella, Harper & Scinto, New York City, argued for appellee/cross-appellant. With him on the brief were John A. O'Brien, Henry J. Renk, Charles P. Baker, Laura A. Bauer and Bruce C. Haas. Also on the brief were Robert H. Patterson, Jr. and Anne Marie Whittenmore, McGuire, Woods & Battle, Richmond, Va. and Robert C. Kline, E.I. DuPont de Nemours, Wilmington, Del.

Before MARKEY, Chief Judge, DAVIS and NIES, Circuit Judges.

DAVIS, Circuit Judge.

Akzo N.V. and Aramide Maatschappij v.o.f. (Akzo) brought suit against E.I. DuPont de Nemours & Co. (Du Pont) in the

United States District Court for the Eastern District of Virginia alleging that Du Pont had deliberately infringed U.S. Patent No. 4,308,374 ('374 patent) issued to Akzo. Akzo sought an injunction prohibiting Du Pont from infringing the '374 patent, an accounting for past damages, a determination that Du Pont's alleged infringement was willful, and an award of attorney fees. Du Pont counterclaimed, asserting that the '374 patent was invalid under 35 U.S.C. § 103; Du Pont also asserted that Akzo had engaged in inequitable conduct before the Patent and Trademark Office (PTO). The District Court, in a detailed and well-reasoned opinion, held the '374 patent invalid under 35 U.S.C. § 103 and therefore not infringed, but concluded that Akzo had not engaged in inequitable conduct before the PTO. *Akzo v. E.I. du Pont de Nemours,* 635 F.Supp. 1336, 230 USPQ 263 (E.D.Va. 1986). We affirm.

## I.

## BACKGROUND [1]

Du Pont and Akzo have both been involved in the commercial manufacture of high-strength, low-density synthetic aramid fibers from poly-p-phenyleneterephthalamide (PPD–T).[2] *See Akzo N.V., Enka B.V., Aramide Maatschappij v.o.f., and Akzona Inc. v. U.S. International Trade Commission and E.I. duPont de Nemours & Co.,* 808 F.2d 1471 (Fed.Cir.1986). These fibers have a number of commercial applications including roping, tires, aviation parts, bullet-proof clothing, and boat hulls. In order to produce a synthetic fiber with high tensile strength, high viscosity solutions of PPD–T must be prepared. The synthetic fibers are then spun from these high viscosity solutions. The patent at issue— Akzo's '374 patent—describes a process for a solvent system whereby PPD–T having an inherent viscosity [3] of at least 2.5 can be made by using N-methylpyrrolidone (NMP) containing at least 5% by weight calcium chloride ($CaCl_2$) salt.

In the mid–1950's, Du Pont began research on aromatic polyamides with the aim of producing a high-tensile strength synthetic fiber. In order to spin a satisfactory fiber, the aromatic polyamides must first be dissolved in a suitable medium. In 1957, Du Pont conducted research on a number of polymerization solvent systems including NMP combined with inorganic salts such as lithium chloride (LiCl) and $CaCl_2$. In 1969, Du Pont targeted PPD–T as the polymer of choice to produce a high-strength synthetic fiber. Researchers investigated a number of polymerization solvent systems for use with PPD–T, but in 1971 Du Pont elected to use hexamethylphosphoramide (HMPA) as a solvent system to yield PPD–T with the high inherent viscosity required for spinning into a finished fiber. Du Pont immediately discontinued research into alternative solvent systems. There were, however, problems with the HMPA solvent system. Du Pont was aware that HMPA was toxic to humans, and in 1975 discovered that it could be carcinogenic to animals. Upon discovering the possible carcinogenic effect, Du Pont began in September 1975 to research again into possible alternative solvent systems. Akzo scientists informed researchers at Du Pont that they had been able to produce a high inherent viscosity PPD–T fiber without using HMPA as a solvent, but did not specify the alternative solvent system.[4] Prior to 1975, Du Pont had not used NMP in the polymerization of PPD–T, but in 1969 it had used NMP with LiCl in the polymerization of another fiber, 1,4 poly-p-benzamide (Fiber B). In addition, in 1969–70, Du Pont had been able to make a third fiber, chloro-PPD–T, using dimethylacetamide (DMAc) or NMP as the polymerization

---

**1.** These facts were found by the District Court and must be accepted because they are not clearly erroneous.

**2.** Du Pont markets this fiber under the trade name Kevlar.

**3.** Inherent viscosity is a measure of molecular weight and polymer chain length.

**4.** At that time Akzo had applied for a patent on the $NMP/CaCl_2$ solvent system in the Netherlands, but no patent had, as yet, issued.

medium in combination with LiCl or $CaCl_2$, but achieving much better results with LiCl.

Early work on an alternative polymerization solvent system by Beers, Katz, and Miller of Du Pont included experimentation with NMP with various salts. It was well-known in the industry at that time that NMP was an effective amide solvent and that the addition of salts such as LiCl and $CaCl_2$ would increase solubility. At first, the researchers concentrated on using LiCl as the inorganic salt, but in early 1976, began to experiment with $CaCl_2$, which was more economical and less toxic than LiCl. By February 1976, Du Pont had succeeded in making high molecular weight PPD–T polymer with a high inherent viscosity using an NMP/$CaCl_2$ solvent system.

In 1971, at the time when Du Pont had selected HMPA as its solvent of choice, two Akzo researchers, Vollbracht and Veerman, began to conduct solubility studies on PPD–T. Several polymerization systems were investigated, including combining NMP with certain salts, among them LiCl and $CaCl_2$. Results of early studies led Vollbracht and Veerman to the conclusion that LiCl performed better than $CaCl_2$, but because of the high cost of LiCl compared with $CaCl_2$ the researchers continued experiments to discover whether $CaCl_2$ could be an effective substitute. In April 1974, after conducting three months of intensive investigation on model substrates, Vollbracht and Veerman submitted an invention disclosure on the preparation of PPD–T in NMP/$CaCl_2$. Akzo filed a patent application in the Netherlands on February 21, 1975. On January 19, 1976, Akzo filed an application for a U.S. Patent.

On June 1, 1976, Du Pont also filed an application for a U.S. Patent for an NMP/$CaCl_2$ solvent system. The technology in the Du Pont application was almost identical to the Akzo application except that Du Pont expressed $CaCl_2$ in moles of $CaCl_2$ per mole of PPD–T while Akzo expressed $CaCl_2$ as weight percent of PPD–T. At the time of application, Du Pont concluded that it would be a close question whether the solvent system would be patentable based on the prior art. After its patent application was filed, Du Pont discovered two additional prior art references: the Federov reference and the Asakura '686 patent.

The examiner declared an interference between Akzo and Du Pont in May 1977. Du Pont then withdrew its application concluding that Akzo would prevail in an interference but that the Asakura '686 patent would render the NMP/$CaCl_2$ solvent system obvious based on the prior art.

Akzo's U.S. applications for the '374 patent were rejected eight times by the PTO on § 103 grounds, and only after more than five years, including two refilings, did the '374 patent issue in December 1981.

The examiner's initial rejections were based on his conclusions that Akzo's NMP/$CaCl_2$ solvent system would have been obvious under § 103 in the light of the prior art references. Only after Akzo stipulated in each of its claims that a minimum percentage by weight of "$CaCl_2$ of at least 5%" was essential, and advanced an argument that this minimum 5% by weight critical limit was not obvious over the prior art, did the examiner allow the patent to issue.

## II.

## VALIDITY

■ We start by repeating the established rules for testing the validity of a patent. Under 35 U.S.C. § 282, patents are presumed valid. *E.g., Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 225 USPQ 345 (Fed.Cir.1985); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 218 USPQ 871 (Fed.Cir.1983). The party asserting patent invalidity must first establish a *prima facie* case of invalidity and must carry the burden of persuasion until the final decision. *Id.* at 1534, 218 USPQ at 875. In cases challenging patent validity, a challenger has an especially heavy burden because of the deference given to decisions of the patent examiner. *American Hoist & Derrick Co. v. Sowa & Sons,*

725 F.2d 1350, 1359, 220 USPQ 763, 770, (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). The factual findings underlying a conclusion of invalidity must be proved by clear and convincing evidence.

A. Under these principles Akzo challenges the District Court's conclusion of invalidity, contending, for one thing, that the District Court merely gave lip service to the § 282 presumption of validity in declaring the '374 patent invalid. On the contrary, not only did the District Court conclude that "the evidence presented at trial shows clearly and convincingly that the invention as a whole would have been obvious to one skilled in the art," 635 F.Supp. at 1353, 230 USPQ at 275, but the court also went on to elaborate with specificity how it came to this conclusion, citing and discussing prior art. Moreover, the District Court found that Akzo had represented the criticality of the "at least 5% CaCl₂" limitation claimed in the patent, noting that the examiner had permitted the '374 Akzo patent to issue only after Akzo had made that limitation in each and every one of the claims of the '374 patent. The court found credible the evidence presented at trial that 5% was not actually a critical percentage for the NMP/CaCl₂ and that Akzo had knowledge that a commercial fiber could be made with less than 5% by weight CaCl₂. The court then concluded that neither the examiner nor any other reasonable examiner would have permitted the Akzo patent to issue had it not been for this misrepresentation. It is clear that the trial court properly accorded the statutory presumption of validity to the '374 patent but simply found the presumption overcome.

B. Akzo also contends that the District Court used an impermissible "obvious to try" standard in determining that the invention would have been obvious under 35 U.S.C. § 103. Of course, an "obvious to try" standard is not a legitimate test of patentability. *See, e.g., American Hospital Supply Corp. v. Travenol Laboratories, Inc.,* 745 F.2d 1, 223 USPQ 577 (Fed. Cir.1984). The statutory standard of § 103 is whether the invention, considered as a whole, would have been obvious to one skilled in the art, not whether it would have been obvious to one skilled in the art to try various combinations. But we must reject Akzo's argument that the District Court based its obviousness determination on an "obvious to try" standard or that it failed to follow the statutory criterion. Akzo dissects the District Court's opinion, taking phrases out of context to support its contention. Looking at the opinion in its entirety, we hold it clear that the District Court based its conclusions on the obviousness issue on the factors enunciated in *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). The trial judge made comprehensive findings as to the scope and content of the prior art, including the Blades '756 patent, the Antal '002 patent, the Federov reference, the Asakura '686 patent, and the Chimura application, citing differences and similarities between the prior art and Akzo's claims. These references were considered individually and then as a whole. The court further made findings on the ordinary skill in the art and on secondary considerations.[5]

While the District Court recognized that no single prior art reference taught that NMP could be combined with CaCl₂ to accomplish the PPD–T polymerization process, it looked at the prior art as a whole, and decided that the invention of the '374 patent would have been obvious to one skilled in the art. *See* findings 156–58, 160,

5. With regard to secondary considerations, the court specifically found that there was no long-felt need, no history of failure of others, and no commercial success. Akzo challenges the trial court's conclusion on secondary considerations saying that it had totally ignored all but these three secondary considerations. As this court has stated previously, the mere fact that the District Court did not include findings and conclusions on all the evidence is not indicative that it was not considered. *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1150–51, 219 USPQ 857, 861 (Fed.Cir.1983). Here, we are satisfied that the court considered all the evidence bearing on secondary considerations.

635 F.Supp. at 1351, 230 USPQ at 274. These findings were well supported by credible testimony and other evidence. Based on this careful factual analysis, taken together with the lack of secondary considerations, the District Court concluded that the '374 patent invention would have been obvious and the patent was therefore invalid.

C. Akzo argues that the District Court committed legal error by ignoring the claim limitation of "at least 5% by weight $CaCl_2$" included in each claim. The judge did not ignore the 5% limitation in the '374 patent claims, but rather determined that the "at least 5% limitation was scientifically meaningless." What the District Court meant by the term "scientifically meaningless" in this instance was that the 5% by weight $CaCl_2$ included in each claim was not, in fact, a critical limitation as Akzo had represented to the PTO. In this regard, the court was persuaded by evidence presented by Du Pont at the trial that a commercial preparation of high viscosity PPD-T could be prepared using as low as 4.4% $CaCl_2$ by weight. The District Court, therefore, attached no patentable significance to the "5% by weight" claim limitation. And after reviewing the prosecution history, we agree that the District Court properly concluded that Akzo had been able to obtain the '374 patent (in the face of the PTO's earlier rejections based on § 103) *only* after representing that 5% was, indeed, a critical limitation.

D. Appellant likewise challenges the District Court's decision on the ground that it rejected the '374 patent on the basis of a single claim, and committed legal error by failing to address each claim separately. Akzo is wrong for two reasons. First, the District Court rejected claim 2 mainly based on its conclusion that the 5% by weight limitation was not a critical limitation and that, absent such a limitation, the

$NMP/CaCl_2$ invention would have been obvious based on prior art. Because each and every claim of the '374 patent contained the 5% by weight limitation, the basis for the rejection of claim 2 would apply equally to each of the other claims. Second, that the District Court did not specifically address each claim cannot be understood to mean that it did not consider each claim. Claim 2 was representative of the $NMP/CaCl_2$ solvent system and was, by Akzo's admission at trial, the broadest claim and completely characteristic of the process. Akzo's trial expert used claim 2 to describe the '374 patent and made no distinctions with respect to any specific patent claims. Accordingly, the District Court did not err in holding all the claims invalid once the broad and representative claim 2 had been declared invalid, and in the absence of any indication that other claims contained other limitations that might have rendered nonobvious the inventions set forth as wholes in those other claims. *See Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 624–25, 223 USPQ 584, 586–87 (Fed.Cir.1984).

The sum of it is that the District Court did not err in holding that the '374 patent is invalid under § 103, and we therefore hold that that decision must be upheld.

### III.

### INEQUITABLE CONDUCT

In its cross-appeal, Du Pont challenges the District Court's conclusion that Du Pont had failed to prove by clear and convincing evidence that Akzo had procured the '374 patent by inequitable conduct. Du Pont claims that the District Court recognized that Akzo made misrepresentations[6] to the PTO and that "but for" those misrepresentations the '374 patent would not have issued.

---

6. The misrepresentations referred to by Du Pont involve Akzo's knowledge of the November 1976 Mosselman report. That report contains data on experiments conducted by Mosselman where, using an improved mixing process, PPD-T with an inherent viscosity of greater than 2.5 could be obtained, under certain circumstances, using less than 5% by weight $CaCl_2$. The Mosselman report came to the attention of Akzo's Dutch patent attorney Visseren during the prosecution of the '374 patent.

■ The defense of inequitable conduct requires proof of: (1) an act of misrepresentation, (2) which was material, (3) involving information that was known or should have been known to the patentee, and (4) which was committed with the requisite intent. *Environmental Designs, Ltd. v. Union Oil Co.*, 713 F.2d 693, 698, 218 USPQ 865, 870 (Fed.Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). *See also J.P. Stevens & Co. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 223 USPQ 1089 (Fed.Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985).

■ The elements of materiality and intent must be determined separately and then weighed together to ascertain whether the patentee engaged in inequitable conduct. The tribunal must then carefully balance the materiality and intent: the less material the proffered or withheld information, the greater the degree of intent that must be proven. In contrast, a lesser degree of intent must be proven when the information has a great degree of materialtiy. Indeed, gross negligence can be the intended level of intent when the misrepresentation has a high degree of materiality. Simple negligence, however, or an error in judgment is never sufficient for a holding of inequitable conduct. *J.P. Stevens & Co.*, 747 F.2d at 1560, 223 USPQ at 1092; *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1363, 220 USPQ 763, 777 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

■ In this instance, the District Court weighed the evidence pertaining to materiality and intent, and concluded that, while there was a material misrepresentation to the PTO,[7] it was "unable to conclude by clear and convincing evidence that the requisite intent [was] present in this case." The court found it unclear whether Akzo had intended the 5% limitation as a scientific or commercial limitation. In addition,

the judge found it impossible to determine whether the results reported from experimentation conducted by Akzo during the prosecution of the '374 patent were indicative of bad faith or of other untainted motivating factors. The result was that the court held itself unable to find the necessary threshold-level intent at all, not even gross negligence on the part of Akzo. *See Orthopedic Equipment Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1384, 217 USPQ 1281, 1287 (Fed.Cir.1983). In the circumstances, we cannot say that the District Court's findings were clearly erroneous and therefore we must reject Du Pont's argument that Akzo engaged in inequitable conduct during the prosecution of the '374 patent.

AFFIRMED.

---

7. The District Court was able to find that Akzo's misrepresentation was material based on its sustainable conclusion that "but for" the fact that Akzo had represented to the PTO that the 5% by weight was a critical limitation the '374 patent would not have issued. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d at 1363, 220 USPQ at 773.