**THYSSEN EDELSTAHLWERKE AG**

**v.**

**TURBINE COMPONENTS CORP.**

**Civ. No. N–84–452 (PCD).**

United States District Court,
D. Connecticut.

June 30, 1987.

George E. O'Brien, Jr., Leonard Boyle, Tyler Cooper & Alcorn, New Haven, Conn., Richard L. Mayer, Arthur D. Gray, Richard L. DeLucia, Michael A. Gollin, Kenyon & Kenyon, New York City, Kevin McCann, Tyler, Cooper & Alcorn, Hartford, Conn., for plaintiff.

Bradford J. Reiger, Melvin Ditman, Ditman and Hershman, New Haven, Conn., Eugene F. Buell, Thomas R. Shaffer, Buell, Ziesenheimn, Beck & Alstadt, Pittsburgh, Pa., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### Facts and Procedural History

Plaintiff, a corporation organized and existing under the laws of the Federal Republic of Germany, instituted this action against defendant, a corporation organized and existing under the laws of the State of Connecticut, alleging that defendant infringed Patents 3,677,789 ("789") and 3,819,338 ("338").[1] Patent 789 claims pioneering technology in the metallurgical arts, to wit—a method for producing "high-temperature corrosion and scale-resistant protective diffusion layers on parts made of high-temperature nickel and/or cobalt-based alloys ... [by] diffusing into the surfaces of the parts that are to be protected aluminum and one or more metals of the platinum group of elements." U.S. Patent 789, at col. 1 (Patented July 18, 1972). Patent 338 relates to the object to which the 789 coating invention has been applied.[2] U.S. Patent 338, at col. 4 (Patented June 25, 1974). Both patents were designed for worldwide commercial use to protect turbine components against corrosive gases and high temperatures which typically shorten the life span of turbine parts. Defendant moves for summary judgment, Fed.R.Civ.P. 56, arguing that the 789 and 338 patents are unenforceable because of the inequitable conduct practiced on the PTO by plaintiff in the prosecution of the

1. Patents 789 and 338 were issued to Deutche Edelstahlwerke. Plaintiff is a successor in interest to Deutche Edelstahlwerke. Both patents will be collectively cited as patent 789.

2. The application which later became 789 on July 18, 1972, was submitted to the Patent and Trademark Office ("PTO") on September 10, 1969. The application which later became patent 338 on June 25, 1974, was submitted to the PTO on September 17, 1971.

two patents. For the following reasons, defendant's motion is denied.

## Discussion

### A. Summary Judgment Standard

Summary judgment may properly be granted where there is no dispute as to the material facts and it is clear that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A court is not authorized to resolve factual questions on such a motion; rather, its task is to determine if any such factual questions exist. If such questions exist, and if they are material to the claims in issue, then the nonmoving party has met its burden and summary judgment is improper. *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 973–74 (Fed.Cir.1985); *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260–61 (Fed.Cir.1985). "Further, as an additional precaution against denying a party its chance to prove a worthy case, any doubt as to the presence or absence of disputed issues of material fact must be resolved in favor of the presence of disputed issues, or in other words in favor of the party opposing summary judgment." *Lemelson*, 760 F.2d at 1261. The onus placed upon a movant for summary judgment on a claim of inequitable conduct is especially heavy, as the claim necessarily involves determinations as to the intent of the party accused of practicing the fraud and the materiality of his alleged misrepresentations or omissions—issues which are typically not appropriate for resolution in a summary fashion. *Kangaroos U.S.A., Inc. v. Caldor, Inc.*, 778 F.2d 1571, 1573–74, 1577 (Fed.Cir.1985) (holding that evaluation of the intent element of inequitable conduct "is rarely enabled in summary proceedings").

### B. Unenforceability Because of Inequitable Conduct

■ Under 35 U.S.C. § 282, patents are presumed valid. *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1270 (Fed.Cir. 1985). However, this presumption may be rebutted by "clear, unequivocal, and convincing evidence of an intentional misrepresentation or withholding of a material fact from the PTO." *Driscoll v. Cebalo*, 731 F.2d 878, 884 (Fed.Cir.1984); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383 (Fed.Cir.1983). More specifically, "[t]he defense of inequitable conduct requires proof of: (1) an act of misrepresentation, (2) which was material, (3) involving information that was known or should have been known to the patentee, and (4) which was committed with the requisite intent. *N.V. Akzo, Aramide Maatschappij v. E.I. Dupont De Nemours*, 810 F.2d 1148, 1153 (Fed.Cir.1987); *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1396–99 (Fed.Cir.1986). The *materiality* prong of the defense "can be established by any of four tests: (1) objective 'but for'; (2) subjective 'but for'; (3) 'but it may have been'; and (4) 37 C.F.R. § 1.56(a), i.e. whether there is a substantial likelihood that a reasonable examiner would have considered the omission of false information important in deciding whether to allow the application to issue as a patent." *See generally Atlas Powder Co. v. E.I. Dupont De Nemours*, 750 F.2d 1569, 1578 (Fed.Cir.1984). The *intent* prong of the defense need not be proven with direct evidence; rather, such may be inferred by the acts of the patent prosecutor. "Proof of deliberate scheming is not needed; gross negligence is sufficient. Gross negligence is present when the actor, judged as a reasonable person in his position, should have known of the materiality of a withheld reference. On the other hand, simple negligence, oversight, or an erroneous judgment made in good faith, is insufficient" *J.P. Stevens & Co. v. Lex Tex Ltd.*, 747 F.2d 1553, 1560 (Fed.Cir.1984) (citations omitted), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985). "Once the threshold of materiality and intent are established as facts, the court must balance them and determine as a matter of law whether the scales compel a conclusion that inequitable conduct occurred." *Atlas Powder*, 750 F.2d at 1578. "[T]he less material the proffered or withheld information, the greater the degree of intent that must be proven. In contrast, a lesser degree of intent must be proven when the information has a greater degree

of materiality." *Akzo*, 810 F.2d at 1153. If inequitable conduct occurred, the patent is unenforceable.

Defendant argues that it has sustained its burden by showing that: (1) plaintiff failed to disclose to the PTO a prior art reference—United States Patent No. 3,107,175 ("175"), issued to Coast Metals, Inc. on October 15, 1963, and its French counterpart, French Patent 1,369,892 ("French 892"),—even though it knew that French 892 was material, having been the basis for the initial rejection of the equivalent of patent 789 prosecuted by plaintiff before the West German PTO; (2) plaintiff misrepresented other facts concerning patent 175, French 892, and United States Patent 3,494,748 ("748"); and (3) plaintiff only selectively disclosed some of the facts revealed in its testing of the prior art references.

### 1. *Failure to Disclose Patent 175*

Defendant's chief claim of inequitable conduct concerns plaintiff's alleged failure to disclose patent 175. The record reveals that, while plaintiff's applications were pending before the PTO, it was simultaneously prosecuting an equivalent application in West Germany. The West German Patent Office rejected the application on November 6, 1970, partly because under French 892 "the embedding of articles of superalloys, provided with thin platinum coatings, in a powder mixture containing metallic aluminum and thus depositing layers of aluminum on the platinized articles are already known." West German Patent Office File No. P 17 96 175.0-45, at 2, (November 6, 1970). On November 27, 1970, the applicants objected to the West German PTO's reference to the French 892, arguing that that patent called for merely "an overlay of aluminum as well as nickel, chromium and/or cobalt" and did not provide for a "protective diffusion layer." *Id.*, Letter of November 27, 1970. Claim One of the application was modified accordingly and on further review by the West German Patent Office the distinction was apparently noted. *Id.*, Memorandum of January 18, 1971.

Coincidentally on January 18, 1971, plaintiff's 789 patent was rejected by the United States PTO partly on the basis of 748 which disclosed "a process of applying a mixture of platinum and aluminum to a nickel-based alloy and diffusing the mixture into the alloy substrate.... Whether the platinum and the aluminum in the process disclosed by [748] are applied as one layer or two separate layers is deemed to be a matter of choice and obvious to one of ordinary skill in the art...." PTO Serial No. 856,539, Memorandum of January 18, 1971, at 2-3. Neither patent 175 nor French 892 were cited by the PTO. On May 18, 1971, plaintiff amended its application to meet the deficiencies noted by the PTO and to distinguish its claims from patent 748. It did not reference 175, French 892, nor the citation of such patent by the West German PTO. Plaintiff also failed to mention this information in its supplemental filing with the PTO on May 18, 1971, July 13, 1971, during the interview on August 12, 1971, and in its filings of August 13, 1971. On September 7, 1971, the PTO allowed all of the elected claims. This action was reversed on October 15, 1971, however, when the PTO discovered patent 175. Plaintiff's Claims 10–12 were rejected "under 35 U.S.C. 103 as unpatentable over [patent 175]. [Patent 175] discloses applying a layer of platinum to a super alloy, placing a mixture containing metallic aluminum on the platinum coated substrate and heating the article to a temperature within the range disclosed by applicants. The invention as set forth in Claims 10–12 is deemed obvious to one of ordinary skill in the art (35 U.S.C. 103) over [patent 175]." *Id.*, Memorandum of October 15, 1971, at 2-3. Plaintiff moved for reconsideration on November 29, 1971, requesting that the PTO further consider the status of patent 175 as prior art. Plaintiff noted that its corresponding West Germany application had been allowed over the corresponding French 892. *Id.* at Memorandum of November 29, 1971, at 1-2. Finally, in response to the interview with the PTO examiner on March 22, 1972, plaintiff attempted to distinguish further its claims from patent 175 and French 892. Plaintiff

also seemingly attempted to dispel the notion that it had improperly failed to disclose the West Germany application and the French patent. Its filing states: "At the interview, the Examiner remarked on the fact that [patent 175] was not called to his attention by applicants although the corresponding French patent was cited in the Germany application. It was explained to the Examiner that [patent 175] was considered by applicants to be no better to [patent 748], and hence there was no need to consider [patent 175] in connection with the claims until it was cited by the Examiner." *Id.*, Memorandum of March 23, 1972, at 2.

## 2. *Misrepresentation of Facts*

Defendant also argues that plaintiff misrepresented the teachings of patent 175 and patent 748 and the relation of those teachings to the patents in suit. First, on two occasions, defendant claims that plaintiff deceived the PTO in misrepresenting that patent 748 did not involve a process of diffusion. According to defendant, the teachings of patent 748 and patent 789 are indistinguishable, as both involve diffusion. Second, as to patent 175, defendant argues (1) that plaintiff misrepresented the particular alloys used in patent 175 as compared to those in patent 789; (2) that plaintiff falsely represented that patent 175 did not involve diffusion but rather an overlay process; and (3) that plaintiff's expert, Dr. Lehnert, misrepresented that patent 175 required a certain thickness for the overlay coating when, in fact, according to defendant, the patent made no such claim.

## 3. *Selective Disclosure of Testing Results*

Third, defendant claims inequitable behavior in plaintiff's selective disclosure of Dr. Lehnert's test results regarding patent 748. Defendant does not argue that the undisclosed test results were different from those actually disclosed to the PTO, merely that the failure to disclose all the test results evidences inequitable conduct.

## *Analysis*

■ To successfully raise the defense of inequitable conduct, the moving party must prove by clear and convincing evidence that the applicant (1) misrepresented or omitted material information and (2) he or she did so with an intent to deceive the PTO. Proof of these two elements is first determined separately and then the conduct, in each respect, is balanced against the other to determine whether the applicant's conduct was truly inequitable. "[T]he less material the proffered or withheld information, the greater the degree of intent that must be proven. In contrast, a lesser degree of intent must be proven when the information has a great degree of materiality." *Akzo*, 810 F.2d at 1153.

## A. *Materiality*

■ Although materiality can be established under any one of four tests, *see supra*, the "PTO standard is the appropriate starting point because it is the broadest and because it most closely aligns with how one ought to conduct business with the PTO." *J.P. Stevens*, 747 F.2d at 1559. PTO Rule 1.56(a) requires "those who practice before the PTO to 'disclose to the Office information they are aware of which is material to the examination of the application.' Known information is material 'where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" *A.B. Dick*, 798 F.2d at 1397, quoting 37 C.F.R. § 1.56(a). Given this definition, plaintiff is hard-pressed to argue that patent 175, French 892, and the initial decision of the West German PTO were not material to its prosecution of patent 789. As noted previously, patent 175 and/or French 892 were cited by both the West German PTO and the United States PTO as the basis for their respective action with regard to the patents in suit. Indeed, plaintiff was granted patents by both PTOs only after it had carefully distinguished its applications from patent 175 and French 892. Where an examiner considers certain prior art to be material and especially where it provides the basis for rejection of the patent

application, due deference is owed to that examiner's analysis and an exhaustive analytical comparison of the prior art with the patent application is unnecessary. *A.B. Dick*, 798 F.2d at 1397; *J.P. Stevens*, 747 F.2d at 1562–63.[3] This is not to say that every reference considered by an examiner need be considered per se material; rather, each reference must be considered in light of its similarity to the patent application in question and in light of the examiner's treatment of that reference. Here, the similarity between the patent in suit and patent 175 is clear. While plaintiff may well have concluded, after substantial testing, that there was a difference between the processes disclosed in the respective patents, it was not its right to conclude that the PTO would reach the same conclusion. Indeed, as the examiner noted, patent 175 was very similar to patent 789 in its attempt to provide for a protective layer to a metallic surface. Although patent 175 apparently accomplishes this process in the form of a surface overlay, while patent 789

does so through the process of diffusion, this difference is not one which is readily apparent from comparing the two patents and indeed even required the plaintiff to engage in testing to prove the difference. Simply stated, it is beyond question that a reasonable examiner would have and, in fact, did find patent 175 important to his decision as to whether to grant applicant's patent. 37 C.F.R. § 1.56(a). Accordingly, plaintiff's argument that patent 175, French 892, and the decision of the West German PTO was not material is without merit.[4]

Defendant has not, however, sustained its burden with regard to the alleged misrepresentations made by plaintiff nor its failure to disclose its complete testing results. Although it is clear that, given the importance of patents 175 and 748 to the PTO's decision that plaintiff's representations as to the teachings of those patents would likewise be material, the particular weight and degree of materiality of those

3. Plaintiff argues in a cursory fashion that materiality cannot be established here as the PTO examiner discovered the relevant information, fully considered the information in his decision, and thus any non-disclosure on the part of plaintiff was harmless. Plaintiff's Opposition Memorandum at 20, citing *Orthopedic Equip.* Although the court has considered this motion under the two-part test of inequitable conduct adopted by the Federal Circuit Court of Appeals, it has done so with some reluctance. In *J.P. Stevens*, 747 F.2d at 1563–64, and *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1457 (Fed.Cir.1984), the court considered the doctrine of inequitable conduct when the references in issue were independently discovered by the patent examiner. Without significant analysis, the court intimated that independent discovery by the examiner "might preclude a finding of materiality." *J.P. Stevens*, 747 F.2d at 1563–64, citing *Environmental Designs v. Union Oil Co. of California*, 713 F.2d 693, 698 (Fed.Cir. 1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) (failure to cite textbook page not considered fraud because reference was known to examiner); *Orthopedic Equip.*, 707 F.2d at 1383 (fraud not sustained by clear and convincing evidence and materiality not established as examiner had discovered the alleged prior art independently). Recently, however, this line of reasoning has been called into question by the decision in *A.B. Dick*, 798 F.2d at 1396–98, which, after distinguishing the *J.P. Stevens/Kimberly-Clark* line of cases, affirmed the lower court's finding of inequitable conduct

despite the examiner's independent discovery of the undisclosed prior art references and concluded that the materiality element had been established. A close analysis of those cases reveals that the present action is more akin to *A.B. Dick* as the references in issue here, as in that case, were deemed to be highly material to plaintiff's claims and, in fact, necessitated the amendment of those claims for purposes of differentiation. *See A.B. Dick*, 798 F.2d at 1398. Nevertheless, this issue need not be actually resolved in view of the outcome of this decision. However, it is hoped that should the claim of inequitable conduct be reasserted at trial both parties will fully brief this particular issue.

4. Plaintiff's reliance on *Carella v. Starlight Archery & Pro Line Co.*, 804 F.2d 135, 140 (Fed.Cir. 1986), for the proposition that patent 175 should not be considered material as it was less relevant than patent 748 is unfounded. Although an applicant need not disclose every reference it has considered as potentially constituting prior art but decided not to be relevant, *cf. Reactive Metals & Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1583 (Fed.Cir.1985), nor those references which are merely cumulative, *Carella*, 807 F.2d at 140, it is required to disclose prior art which is clearly relevant to the claim it seeks to have patented. Although there may have been some question as to the greater relevance of patent 748 versus patent 175, the West German PTO rejection of plaintiff's claims because of the French counterpart to patent 175 should have been disclosed to the U.S. PTO as of that date.

claimed misrepresentations as they related to the claim of inequitable conduct must be viewed from the perspective of the PTO examiner. More specifically, "[t]he mere fact that [plaintiff] attempted to distinguish the ... process [taught by its own invention] from prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion" based on his analysis of the relevant information. *Akzo N.V. v. U.S. Int'l Trade Commission*, 808 F.2d 1471, 1482 (Fed.Cir.1986). Thus, as to the first argument, defendant's claim that plaintiff somehow attempted to deceive the PTO as to the fact that patent 748 did not reference the word diffusion is simply wrong. Plaintiff's May 18, 1971, submission was that patent 748 differed from patent 789 in the nature of the diffusion process. It did not suggest that patent 748 did not refer to a diffusion process. Such a submission was within plaintiff's rights. Second, as to defendant's claim that plaintiff misrepresented the results of its testing regarding patent 748, it has not met its burden of showing by clear and convincing evidence that the information was material, was misrepresented, or was made with the intent to deceive the PTO. The examiner was provided with Dr. Lehnert's affidavit and the results of his testing and was free to analyze and compare those submissions with the representations made by plaintiff. Deference is owed to his determination as to how to resolve any apparent discrepancies in the information presented to him and it cannot be concluded that plaintiff's behavior in this regard was inequitable. Third, defendant argues that plaintiff deceived the PTO by claiming that patent 175 dealt with stainless steel and superalloys, rather than the nickel, cobalt, or iron based alloys involved in patent 789. At first glance, there is an apparent contradiction between plaintiff's submission of November 29, 1971 at 2 as to the nature of stainless steel and superalloys and its compliance with the trial preparation order which states that the superalloys do in fact consist of nickel, cobalt, and iron. Plaintiff's Response to Defendant's Finding of Fact 47. However, as plaintiff explains in its

brief, it was attempting to represent to the PTO that patent 175 need not contain either cobalt or nickel based alloys; rather that patent 175 could involve any alloy combination. Plaintiff's response to defendant's proposed finding of fact 47 is not inapposite, as plaintiff does not admit that superalloys may *only* contain nickel, cobalt or iron based alloys. Moreover, as noted previously, it is presumed that the examiner is competent in this area of research and that he fully considered plaintiff's representations in light of all the evidence. His opinion will not be second guessed on this technical matter. Similarly, defendant has not sustained its burden with respect to its fourth claim of misrepresentation. Plaintiff was free to present its reasonable interpretation of patents 175 and 748, their relationship to each other, and their relationship to the pending applications for purposes of determining whether they constituted prior art. Plaintiff's conclusion as to whether patents 175 and 748 taught a process of diffusion like that proposed in patent 789 was a determination which the patent examiner was free to reject or accept after he had fully considered all the facts. Based on the record submitted, it cannot be concluded that plaintiff's belief was so unfounded as to constitute a misrepresentation made with intent to deceive the PTO. Finally, defendant's claimed fifth misrepresentation that plaintiff's attorney and its expert, Dr. Lehnert, made inconsistent statements to the PTO regarding the thickness of the platinum layer disclosed in patent 175 equally does not meet the test of materiality nor are they shown to have been intended to deceive the PTO. As defendant points out, plaintiff admitted to the PTO that patent 175 did not specify an exact thickness and such was readily apparent in the patent's claims. A fair reading of Dr. Lehnert's affidavit was that he was interpreting what patent 175 meant by "thinness," not that he was stating what patent 175 actually taught. The examiner had available all the relevant facts and was free to make further inquiry and his own decision.

Defendant has not sustained its burden to show the absence of any factual ques-

tion, though any or all of the five claimed misrepresentations were material in light of the availability to the examiner of all relevant data from which he was free to make his own determination. In presenting its position, plaintiff could properly attempt to distinguish patents 175 and 748 from patent 789. *Akzo,* 808 at 1482. Whether plaintiff overstepped its bounds and actually misrepresented the facts regarding these two patents, as opposed to merely distinguishing them from patent 789, is an issue not clearly resolvable in accordance with defendant's claims based on the present record. It cannot, therefore, be resolved in a summary fashion. Furthemore, as to the five claimed misrepresentations, defendant has produced no evidence which conclusively proves the requisite intent. *Akzo,* 810 F.2d at 1153. For instance, even if Dr. Lehnert's representations as to thinness described in patent 175 are considered material, plaintiff's prior disclosure that patent 175 did not specify an exact thickness, coupled with the natural reading of Dr. Lehnert's affidavit, arguably amounts to mere negligence and does not satisfy the intent element necessary for a finding of inequitable conduct.[5]

Third, as to defendant's claim that plaintiff's expert failed to fully and completely disclose the entirety of his test results regarding patents 175 and 748, the burden of proof as to materiality has simply not been sustained. Defendant does not argue that the allegedly undisclosed test results differed from the results actually disclosed to the PTO. Rather, defendant argues that the mere failure to disclose all the test results constitutes inequitable conduct. This conclusion is not, however, compelled by the present record. Arguably, plaintiff was obligated to reveal the additional test results only if they contradicted the results that were disclosed. *Rohm & Haas Co. v. Crystal Chemical Co.,* 722 F.2d 1556, 1572 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). To the extent such results were merely dupli-

cative or supplemental, their disclosure cannot be held to have been obligatory. *Norton v. Curtiss,* 433 F.2d 779, 799 (C.C. P.A.1970); *Air Prod. & Chem. v. Chas. S. Tanner Co.,* 219 U.S.P.Q. 223, 243 (D.S.C. 1983). Defendant has not satisfied the first element of the test of inequitable conduct, materiality, and, therefore, summary judgment must be denied.

**B. *Intent***

 Inequitable conduct also requires proof of a threshold intent which need not be proven by direct evidence. It may be proven by showing conduct, the foreseeable consequences of which are presumed to have been intended by the actor. Proof of deliberate scheming is not needed; gross negligence is sufficient. Gross negligence is present when the actor knew or should have known of the materiality of a withheld reference. On the other hand, simple negligence, oversight or an erroneous judgment made in good faith is insufficient. *Atlas Powder,* 750 F.2d at 1578, citing *J.P. Stevens,* 747 F.2d at 1559–60. If the person charged with inequitable conduct "knew, or should have known, that a piece of prior art, or other information, would be material, i.e., important to the PTO in making its decision, a failure to disclose that art or information can be sufficient proof that a wrongful intent existed to mislead the PTO and may result in a finding of" inequitable conduct. *Kansas Jack, Inc. v. Kuhn,* 719 F.2d 1144, 1152 (Fed.Cir.1983). However, an applicant cannot be automatically faulted when something properly thought initially to be unimportant to the PTO's decision, later becomes important. *Id.* at 1151; *Oetiker v. Jurid Werke GMBH,* 671 F.2d 596, 600 (D.C.Cir.1982). All the circumstances must be considered and the degree of materiality must be balanced against the degree of culpability. The more material the undisclosed information or prior art reference, the less the degree of intent that needs to be proven. *Akzo,* 810 F.2d at 1153.

---

**5.** Similarly, defendant's argument that plaintiff has continued its practice of inequitable conduct by fraudulently representing to the court that patents 748 and 175 taught a process of overlay, rather than diffusion, *see* Reply Memorandum at 21–25, is simply not absolutely demonstrated in the record. Plaintiff's representations as to patent 748 and 175 in relation to patent 789 raises a question of material fact, which cannot be decided on a motion for summary judgment.

Defendant has not established the requisite degree of intent. In November of 1970, Dr. Lehnert examined patent 175 and concluded that it described an overlay process rather than diffusion and, therefore, was not material to the patents being prosecuted before the West German PTO and the United States PTO. *See* Affidavit of Dr. Lehnert at 2–3. This view was apparently adopted by the West German PTO on January 18, 1971. File No. P. 17 96 175.0–45, Memorandum of January 18, 1971. Thus, at the relatively early stages of the patent 789 prosecution, plaintiff determined that patent 175 and French 892 were not material to the patent prosecution before the United States PTO. Largely on the same grounds, it likewise determined that patent 748 was not material. Affidavit of Dr. Lehnert at 3. Furthermore, even though plaintiff was required to and did amend its claims to distinguish them from patents 175 and 748, patent 789 was issued over these claimed comparable patents. Thus, plaintiff's initial view that patents 175 and 748 were not material was erroneous, in view of their citation by the PTO and their similarity to the patent in suit, *see supra,* cannot be considered to reflect such a high degree of deceptive intent inasmuch as patents 789 and 338 were granted.

■ On balance, therefore, the current record does not warrant a finding of inequitable conduct. Although patent 175 was material to the patents in suit, the references were discovered and fully considered by the examiner through his own research and thus the initial non-disclosure did not deprive the examiner of necessary information. Balanced against the questionable degree of intent on the part of plaintiff, defendant has not produced sufficient facts to warrant a finding of inequitable conduct. Accordingly, summary judgment is denied.[6]

SO ORDERED.

---

**6.** This ruling does not preclude defendant from producing further evidence in support of this defense at trial.