**JOSLYN CORPORATION, Plaintiff,**

v.

**RTE CORPORATION, Defendant.**

No. 86 C 2319.

United States District Court, N.D. Illinois, E.D.

March 16, 1988.

---

Walter E. Wyss, Timothy J. Vezeau, John S. Paniaguas, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for plaintiff.

J. William Hayton, Larry L. Thompson, Bell, Boyd & Lloyd, Chicago, Ill., for defendant.

## MEMORANDUM OPINION
## AND ORDER

ASPEN, District Judge:

Plaintiff Joslyn Corporation brings this action charging RTE Corporation with infringement of its patent No. 4,161,012 (" '012 Patent") on the Cunningham Device, a surge arrester which protects electrical equipment from sudden electrical surges. RTE now moves for summary judgment which, for the reasons stated herein, we deny.

## I

On July 10, 1979, the United States Patent Office issued Francis Cunningham and, as assignee, Joslyn the '012 Patent for the Cunningham Device. At its simplest, the Cunningham Device consists of a series of cylindrical metal blocks called valve blocks inside a rubbery housing of dielectric material. Throughout the patent prosecution, Cunningham asserted that the prior art did not teach the elimination of the gap between the valve blocks and the housing in surge arresters of similar construction. The patent examiner ultimately granted Cunningham's gap elimination claim as Claim 46:

46. A method of manufacturing a surge arrester for providing overvoltage surge protection to a component of a high voltage electrical power circuit comprising the steps of

forming a valve element having an outer surface and including a plurality of valve blocks and

subsequently enclosing said valve element within an arrester housing formed from a dielectric material and having conductive material encircling at least a portion of said dielectric material, said enclosing step comprising the step of excluding substantially all of the air from said outer surface of said valve element.

'012 Patent, col. 21, lines 52–64. In February of 1986, six and one-half years after the '012 Patent issued, Joslyn disclaimed Claim 46 as too broad or invalid.

Claims 47 and 48 of the '012 Patent identified two different methods of placing the housing about the valve blocks:

47. A method of manufacturing a surge arrester ... comprising the steps of dilating said arrester housing by disposing said valve element therein.

48. A method of manufacturing as defined in claim 46 wherein said excluding step comprises the step of molding said dielectric material about said outer surface of said valve element.

*Id.*, col. 21, lines 65–68, col. 22, lines 1–15.

In this action, Joslyn charges that RTE's surge arrester infringes the '012 Patent. In its motion for summary judgment, RTE contends that the '012 Patent is (1) unenforceable because Cunningham intentionally failed to disclose during the patent prosecution prior art that taught gap elimination and (2) invalid for obviousness. We find that Joslyn has created genuine issues of material fact as to each of RTE's challenges to the '012 Patent, and we accordingly deny the motion for summary judgment.

## II

Summary judgment is appropriate when the moving party demonstrates that no genuine issue of material fact exists and that it is accordingly entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the movant has set forth facts sufficient to support judgment in its favor, the opposing party must present some evidence that creates a genuine issue of material fact or show clearly that the moving party is not entitled to judgment on the undisputed facts. In using the former approach, the party opposing the motion "must point to an evidentiary conflict created on the record at least by a counter statement of a fact or facts set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient." *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 835–36 (Fed.Cir. 1984).

### A. Inequitable Conduct

To establish that inequitable conduct by Cunningham, the patent applicant, renders the patent unenforceable, RTE must show by clear and convincing undisputed evidence that Cunningham failed to disclose material information to the patent examiner with the intent to mislead the examiner and thereby obtain the patent. *J.P. Stevens & Co., Inc. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559 (Fed.Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed. 2d 60 (1985). The Federal Circuit analyzes inequitable conduct claims by determining

(1) whether the undisclosed information is *material*, (2) whether the patent applicant *intended to mislead* the examiner and (3) upon balancing these two findings, "whether the scales tilt to a conclusion that inequitable conduct occurred." *Id.* at 1560; *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1364 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984); *N.V. Akzo v. E.I. DuPont de Nemours & Co.*, 810 F.2d 1148, 1153 (Fed.Cir.1987). We find that in its response and statement of disputed facts, Joslyn has created a genuine issue as to the second factual determination, whether Cunningham intended to mislead the patent examiner and accordingly deny summary judgment as to inequitable conduct without assessing the materiality of the undisclosed information.

Establishing a patent applicant's intent to deceive raises factual issues that are rarely undisputed. *Albert v. Kevex Corp.*, 729 F.2d 757, 763 (Fed.Cir.1984). Summary judgment as to inequitable conduct is nevertheless appropriate when the moving party presents clear and convincing undisputed evidence that the patent applicant knew *or should have known* that a prior art reference was material. *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1398 (Fed.Cir.1986); *Aqua–Aerobic Systems, Inc. v. Richards of Rockford, Inc.*, 1 USPQ2d 1945, 1958 (N.D.Ill.1986), *aff'd in part*, 835 F.2d 871 (Fed.Cir.1987). A patent applicant's good faith belief that material prior art is immaterial to assertions made during the patent prosecution must be a reasonable belief to overcome an inequitable conduct claim. *Argus Chemical Corp. v. Fibre Glass–Evercoat Co.*, 759 F.2d 10 (Fed.Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985). Joslyn has identified evidence in the record that creates a genuine factual issue of the reasonableness of Cunningham's good faith belief that certain prior art was immaterial.

RTE contends that during the patent prosecution, Cunningham failed to disclose prior art tending to disprove his assertion that the prior art did not teach gap elimination. RTE identifies numerous instances throughout the patent prosecution in which Cunningham insisted that the prior art did not teach the elimination of the separation between the valve blocks and the rubbery housing. At the outset, we observe that in each instance, however, Cunningham was careful to qualify his assertion to apply only to surge arresters with the valve block structure. For example, in the Remarks section to an April 5, 1978 Amendment filed with the Patent and Trademark Office ("PTO"), Cunningham stated:

As disclosed in this application, a prior art surge arrester using an arrester element *including one or more valve blocks formed from negative resistance material* typically included a separation between the internal surface of the surge arrester insulating housing and the outer surface of the arrester element, i.e., the outer surfaces of the valve blocks ...

It is known that voltage stress is present across the separation referred to which may result in corona and in subsequent damage or destruction to the surge arrester. Prior art devices traditionally attempted to alleviate this voltage stress across the separation by surrounding the separation with an equipotential field..... Applicant has adopted a novel and radically different solution to this problem ... [A]pplicant eliminates the separation between the arrester element and the internal surface of the arrester housing by forming an atmosphere excluding contact between the arrester element, i.e., the valve blocks and/or a gap element, and the internal surface of the arrester housing to thereby preclude the occurrence of corona at that interface. (Emphasis added).

In a November 21, 1978 Supplemental Amendment, Cunningham summarized a meeting with the patent examiner:

During the interview, several exhibits and/or models were shown to the Examiner generally for the purpose of demonstrating the separations typically present in prior art surge arresters between the inner surfaces of porcelain arrester housings and the outer surfaces of arrester elements, *that is, the outer surfaces of*

*valve blocks formed from negative re-sistance materials.* (Emphasis added).

RTE next identifies eight surge arresters that Cunningham knew were in the prior art and knew or should have known were material to his assertion that the prior art did not teach gap elimination. Joslyn does not dispute that these surge arresters did indeed teach the exclusion of air from the gap or the filling of the gap with various substances. However, Joslyn does dispute the fact that all material characteristics of those surge arresters and the Cunningham Device are sufficiently similar to warrant the finding that Cunningham should have known that those references were material to his gap elimination claim. By providing evidence to support this position, Joslyn has satisfied its burden as the party opposing summary judgment.

Among the eight prior art surge arrester references that RTE identifies[1] are the '135, '577, '566 and '718 patents. As Cunningham points out in his affidavit, these references differ from the Cunningham Device in that their structures consist of granules of various substances poured into the housing rather than rigid metallic valve blocks inserted into or surrounded by a rubbery housing. Cunningham's assetions that the prior art did not teach gap elimination were all made in the context of surge arresters made of "valve blocks formed from negative resistance material," buttressing the significance of this distinction. The '012 Patent expressly points out this distinction:

> As conventionally used in this art, the term "valve block" as used hereinafter refers to a three-dimensional rigid block of negative resistance material formed prior to insertion within an arrester enclosure, *as distinguished from a mass of granules* ... (Emphasis added).

'012 Patent, col. 14, lines 62–68. Further, Claim 46, upon which RTE relies heavily, refers to "a valve element having an outer surface and including a plurality of valve blocks."

Two other surge arrester references that RTE identifies are the '672 and '334 patents. Again, these references are sufficiently dissimilar from the Cunningham Device to set forth a factual dispute as to whether Cunningham was reasonable in considering them immaterial to his claim. Like the Cunningham Device and unlike the granular structure of the four surge arresters discussed above, the '672 and '334 references consisted of a metal valve block structure. However, the method of gap elimination in those two references differed from that of the Cunningham Device. Rather than teaching the complete elimination of the gap, the '672 and '334 references taught filling the gap with certain substances to exclude air. Cunningham emphasized during the patent prosecution that this device eliminated the gap by interference fit (i.e., the forcing of the valve blocks into the rubbery housing) or molding. Claims 47 and 48 identify these methods.

We are not suggesting that RTE has succeeded or failed in demonstrating that the granular structure and gap filling characteristics of the identified prior art references do not render those references immaterial. We do decide, however, that RTE has failed to present us with conclusive undisputed evidence that Cunningham was unreasonable in believing that those distinctions between the cited references and the Cunningham Device rendered them immaterial. Thus, Joslyn has satisfied its burden of identifying a genuine issue of material fact. It remains for the trier of fact to determine whether these characteristics of the prior art devices sufficiently distinguish them from the Cunningham Device to warrant a finding that Cunningham was reasonable in not believing that those devices were material to his claim that the prior art did not teach the elimination of the gap between the valve block and housing. A finding that Cunningham was reasonable would defeat RTE's inequitable

---

1. One of these surge arresters is a Japanese device that Cunningham apparently tested during the development of his device. We cannot determine from the limited evidence before us that the Japanese device is within the prior art or material, so we need not consider it further in the context of this motion.

conduct claim by demonstrating a lack of intent. Accordingly, the motion for summary judgment as to inequitable conduct is denied.

### B. Obviousness of the Cunningham Device

 Under the obviousness doctrine, a patent is invalid if the invention of the device required no more than the "skill ... possessed by an ordinary mechanic acquainted with the business." *Hotchkiss v. Greenwood*, 52 U.S. (11 How.) 248, 267, 13 L.Ed. 683 (1851). This judicially-developed doctrine was based on a notion that patents should not issue for devices that incorporate an insignificant or insufficiently original modification of existing technology. In § 103 of the Patent Act of 1952, Congress codified this doctrine and set forth the primary factors a court should consider in addressing an obviousness challenge to the validity of a patent:

> A patent may not be obtained though the invention is not identically disclosed or described [in the prior art] if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103 (1984). In response to the perceived difficulties that the courts experienced in resolving the highly technical issues of an obviousness claim, the Supreme Court identified a number of "secondary considerations" that are relevant to an obviousness analysis:

> Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

*Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 35–36, 86 S.Ct. 684, 694, 703, 15 L.Ed.2d 545 (1966). It is not certain at what point secondary considerations can render a patent valid despite the overwhelming evidence of obviousness under the primary considerations of § 103. It is clear, however, that regardless of the strength of a defendant's case under the § 103 criteria, a court must assess asserted secondary considerations to determine their probative value before deciding obviousness. A court cannot presuppose upon the strength of the § 103 criteria that the secondary considerations cannot be of sufficient probative value to elevate the subject matter of the device to the level of patentable invention. *Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1557 (Fed.Cir. 1985). Therefore, when present, evidence of secondary considerations must be considered. *Glaros v. H.H. Robertson Co.*, 600 F.Supp. 342, 344 (N.D.Ill.1984), *aff'd*, 797 F.2d 1564 (Fed.Cir.1986), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987). For purposes of a summary judgment motion challenging the validity of a patent, then, a patent holder can survive the motion irrespective of the lack of disputed facts as to the § 103 criteria if there is a genuine disputed fact as to existence and probative value of any secondary considerations. Such is the case here.[2]

 RTE's obviousness claim is essentially that the manufacturing method of interference fit as set forth in Claim 47 was obvious at the time the '012 Patent issued. In its response and statement of disputed facts, Joslyn presents ample evidence to support its contention that the secondary considerations of long felt need, a search for solution, and commercial success are sufficiently probative to support a finding by the trier of fact that the Cunningham Device was nonobvious. RTE does not dispute the majority of this evidence. Rather, RTE contends that Joslyn has not set forth

---

**2.** Joslyn does not concede the facts that RTE alleges in support of its obviousness claim based on the primary considerations of § 103. Nor do we suggest that RTE has satisfied its burden of demonstrating on undisputed facts that it is entitled to judgment as a matter of law under the § 103 criteria. Our decision here rests entirely on the identification of a genuine issue of material fact as to the existence and probative value of the *Graham* secondary consideration.

evidence establishing "a nexus ... between the merits of the claimed invention and the [secondary consideration] evidence offered." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1539 (Fed.Cir.1983). We disagree. Joslyn has presented evidence that interference fit met a long felt need for the reduction of the risk of explosions under certain conditions, and that this characteristic may partially explain the commercial success of the Cunningham Device. It remains for the trier of fact to decide whether Joslyn has proved a sufficient nexus to warrant a finding of nonobviousness under the secondary considerations. Accordingly, the motion for summary judgment as to obviousness is denied.

### III

#### Conclusion

Joslyn has identified evidence in the record sufficient to create genuine issues of material fact as to inequitable conduct and patent obviousness. Accordingly, RTE's motion for summary judgment is denied. It is so ordered.